## Case No. 1,692.

### BOUCICAULT v. HART.

[13 Blatchf. 47;[1] 4 Am. Law Rec. 726; 8 Chi. Leg. News, 257; 22 Int. Rev. Rec. 150; 23 Pittsb. Leg. J. 161.]

Circuit Court, S. D. New York. June 25, 1875.

COPYRIGHT—INJUNCTION—DEDICATION TO PUBLIC —COMMON LAW RIGHT.

1. In order to secure a copyright of a book or a dramatic composition, under the Revised Statutes, it is necessary not only to deposit with the librarian of congress a printed copy of the title of the work, but the work must be published within a reasonable time after such deposit of the printed copy of the title, and two copies of the work must, within ten days from its publication, be delivered to the librarian.

[See Chase v. Sanborn, Case No. 2,628; Carillo v. Shook. Id. 2,407; Chapman v. Ferry, 18 Fed. 539; Jollie v. Jacques, Case No. 7,437.]

2. Where a printed copy of the title of a dramatic composition was deposited in October, 1874, and a bill was filed in February, 1875, to restrain an infringement of the copyright of the work, but the bill did not allege any publication of the work, or any delivery of copies, or any reason why the same had not been done, it was held, on demurrer, that the bill did not show that a complete copyright had been obtained.

3. The exclusive right to publicly perform a dramatic composition, under section 4966 of the Revised Statutes, is dependent upon the existence of a copyright therefor.

[See Wheaton v. Peters, 8 Pet. (33 U. S.) 591; Clayton v. Stone, Case No. 2,872; Clemens v. Belford, 14 Fed. 728.]

4. Under section 4967 of the Revised Statutes, a person who had printed and published part of a dramatic composition, without the consent of its author, he being a citizen of the United States, and had publicly announced his intention to sell copies of the same, was restrained, by injunction, from printing or publishing the work.

[See Boucicault v. Wood, Case No. 1,693; Shook v. Rankin, Id. 12,804; Martinetti v. Maguire, Id. 9,173.]

5. Where the author of a dramatic composition has not printed it, but has only permitted and procured it to be represented on the stage of a public theatre for his own benefit, and

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

through his selected channels, he has not abandoned it or dedicated it to the public, nor has he published it, within the meaning of the provisions of the Revised Statutes in regard to copyrights.

6. The right of an author of a dramatic composition, to retain and use it for his personal benefit, without publication, is a common law right.

7. This court has no power to administer common law relief in a suit between citizens of the same state.

[In equity. Bill by Dion Boucicault against Joshua Hart. Heard upon demurrer to the bill.. Demurrer overruled, with leave to the defendant to answer within 30 days.]

Richard O'Gorman, for plaintiff.
Ambrose H. Purdy, for defendant.

HUNT, Circuit Justice. The facts, as alleged in the bill, are as follows: The complainant, Dion Boucicault, a citizen of the United States, and a resident of the state of New York, before October 26th, 1874, composed and wrote a dramatic composition called the "Shaughraun," of which he is sole proprietor. On the 26th of October, 1874, he mailed to the librarian of congress a printed copy of the title of this play, and received from the said librarian the usual certificate setting forth the said filing of the title of said dramatic composition, "the right whereof he" (said Boucicault) "claims as author and proprietor, in conformity with the laws of the United States respecting copyrights." He complied in all respects with all the provisions of the Revised Statutes of the United States as to copyrights. On the 24th of November, 1874, Boucicault caused said play to be performed before persons licensed by him to witness the same, at Wallack's Theatre, for the especial benefit of said Boucicault, and such performances have continued there for his benefit and profit, and said drama has never been performed otherwise or elsewhere with his consent. Boucicault never printed said play for circulation or publication or sale, and the play is still in manuscript, and has never been published, circulated or sold, or copied, or used, in any way, with the permission of Boucicault, unless in the said performance of said play at Wallack's Theatre, for Boucicault's benefit. The defendant Hart is owner of a theatre on Broadway, called the Theatre Comique. He possessed himself, surreptitiously, without the consent of Boucicault, of the manuscript of the "Shaughraun," thus made himself acquainted with its contents, and printed and published the manuscript, or a material part thereof, under the name of the "Skibbeah," a play which professed to be "arranged" by one G. L. Stout. This play has twelve scenes, and eight of them are copied from Boucicault's play of the "Shaughraun." Defendant has printed and published said "Skibbeah," and publicly announced his intention to sell copies of the same, containing these

eight scenes of Boucicault's play, without the license or consent of Boucicault. Defendant did also, on the 26th of January, 1875, and continuously since then, up to the granting of an injunction in this suit, publicly represent this "Skibbeah" at his Theatre Comique, on Broadway. Boucicault, at that time, remonstrated with the defendant, in writing, against his representing this play. The "Skibbeah," as far as these eight scenes are concerned, is merely a copy of Boucicault's "Shaughraun." It is, in plot, situation, stage business, language, costumes, scenery, incidents, and series and sequence of events, identical with Boucicault's play of the "Shaughraun." The four scenes which are not taken from the "Shaughraun" are taken from a play of which one Reeve is author, called "Pyke O'Callaghan," and these four scenes are merely introductory and accessory to the other eight scenes, which contain the material part of the said "Skibbeah," and are a mere copy of Boucicault's "Shaughraun." The bill prays for an injunction restraining the defendant from performing and representing the said play, or from printing or publishing any copy of the same, and for other relief.

To this bill the defendant demurs upon the following grounds, viz.: For that it appears, on the face of the bill, that the said drama called "Shaughraun" has been for a greater period than ten days prior to the commencement of this suit, publicly performed, and caused to be publicly performed, by the complainant, upon the stage of a theatre; and it does not appear by said amended bill that two printed copies of said drama, or any copies thereof, were filed in the office of the librarian of congress, or sent by mail to said librarian of congress, at Washington, District of Columbia, within ten days after the public performance thereof, or at any other time; and for that it is alleged, in said amended bill, that the complainant has never published, or caused to be published, the said drama called "Shaughraun;" and for that it does not appear, by said amended bill, that the complainant has ever given any notice that he has complied with the requirements of the acts of congress respecting copyrights; and for that it does not appear, by said amended bill, that the complainant has ever given any notice that the said drama is secured by copyright.

It is admitted, by these pleadings, that the plaintiff is the author of the literary work in question. It is also admitted, that the defendant, without the consent, and against the remonstrance, of the complainant, made use of said work for his own benefit, by performing the same at his theatre, and by printing and publishing copies thereof. The defendant insists, that in so doing, he has violated no law of the land; in other words, that the complainant has not taken the measures necessary to secure to himself the exclusive right to the performance or the

publication of the drama called the "Shaughraun." The complainant relies upon the deposit of a printed copy of the title with the librarian of congress, as the act upon which the grant of copyright depends, and, having performed the act, insists that his copyright is complete. The defendant takes the position, that, no copies of the work being filed with the librarian, there is no right to sue; and that, to entitle an author to copyright, the author must deposit the book, as well as the title, with the librarian. This is the first question to be considered.

There is no common law of copyright which can affect this case. Wheaton v. Peters, 8 Pet. [33 U. S.] 657. The rights of the complainant to a copyright, if any he has, are conferred by the constitution and the statutes of the United States. It is there that we must look for them, and, unless there found, they do not exist. If conditions are imposed by statute, as preliminary to the existence of such rights, their performance must be shown. All the conditions clearly imposed by congress are important, and their performance is essential to a perfect title. Wheaton v. Peters, supra. The constitution, in section eight, article one, gives to congress power "to promote the progress of science and useful arts, by securing, for limited times, to authors and inventors, the exclusive right to their respective writings and discoveries." The first act of congress upon this subject was passed May 31st, 1790. 1 Stat. 124. The first section of that act secured to the author the sole right of printing, publishing, and vending his map, chart, or book, for the term of fourteen years "from the recording the title thereof in the clerk's office, as is hereinafter directed." The third section provided, that "no person shall be entitled to the benefit of this act," where such book has been already published, "unless he shall first deposit, and, in all other cases, unless he shall before publication deposit, a printed copy of the title * * * in the clerk's office," &c. "And such author * * * shall, within two months, * * * cause a copy of the said record to be published in one or more of the newspapers printed in the United States, for the space of four weeks." The fourth section required, that, within six months after the publishing thereof, a copy of the book should be delivered to the secretary of state, to be preserved in his office. The sixth section provided, that any person who shall print or publish any manuscript without the consent of the author &c., shall be liable to damages. By a statute passed April 29th, 1802 (2 Stat. 171), it was enacted, that, in addition to the above requisites, the author should give information by causing a copy of the required record to be inserted in the title page or the page of the book next to the title. This act of 1802 was repealed, and the copyright acts were amended, in 1831. Act of February 3d, 1831 (4 Stat. 436). Section 4 of that act pro-

vided, that no person should be entitled to the benefit of the act, unless he should, before publication, deposit a printed copy of the title of the book, &c., with the clerk of the district court where the author resided. It also provided, that the author or proprietor of such book, &c., should, within three months from the publication of said book, &c., deliver a copy of the same to the clerk. The 5th section of that act provided, that no person should be entitled to the benefit of the act, unless he should give information of copyright being secured, by causing to be inserted, in each copy of each edition published, the words "Entered according to act of congress," &c. In July, 1870, congress passed an act to revise, consolidate and amend the statutes respecting patents and copyrights. 16 Stat. 198. By section 90 of that act, it was provided, "that no person shall be entitled to a copyright, unless he shall, before publication, deposit in the mail a printed copy of the title of the book, or other article, or a description of the painting, drawing, &c., for which he desires a copyright, addressed to the librarian of congress, and, within ten days from the publication thereof, deposit in the mail two copies of such copyright book or other article, * * * to be addressed to said librarian of congress, as hereinafter to be provided." The librarian is then directed to make a record of the name of such copyright book, in words specifically prescribed, and to give a copy of the same to the proprietor. By section 93, the proprietor of every copyright book is required to mail to the librarian of congress, within ten days after its publication, two complete printed copies thereof, and a copy of every subsequent edition. Section 97 enacts, that no person shall maintain an action for the infringement of his copyright, unless he shall insert a notice thereof on the title page or the page immediately following. The various acts mentioned have been referred to, to show to some extent the history and previous condition of the law on the subject under consideration. They are all superseded by the Revised Statutes of the United States, a work undertaken by authority of a statute passed June 27th, 1866 (14 Stat. 74), and taking effect on the 1st day of December, 1873 (section 5595). Those statutes provide as follows: Section 4952 provides, that the author of any book, map, dramatic composition, &c., on complying with the provisions of the chapter, shall have the sole liberty of publishing and printing the same, and, in the case of a dramatic composition, of publicly representing the same. Section 4953 provides, that copyrights shall be granted for the term of twenty-eight years from the time of recording the title thereof in the manner thereinafter directed. Section 4956 provides, that no person shall be entitled to a copyright, unless he shall, before publication, mail to the librarian of congress a printed copy of the title of the

book or other article, &c., for which he desires copyright, nor unless, within ten days from publication, he mails two copies of the copyright book or other article to the librarian. Section 4957 provides, that, immediately on receipt of the printed copy of the title of the copyright book or other article, the librarian is forthwith to record the same; and that he shall give a copy of the same when required. Section 4959 requires the delivery to the librarian of congress of two copies of the book, within ten days after publication. Section 4960 provides, that the proprietor of a copyright book or other article, failing to mail printed copies of the book, &c., is to pay a penalty of twenty-five dollars. Section 4964, referring to books, provides, that if any person, after the recording of the title of any book, shall, without the consent of the proprietor of the copyright first had in writing, print or publish any copy of said book, he shall forfeit the copy, and be liable to an action. Section 4965 makes a similar provision as to maps, charts, &c., and protects them from the time of the recording of the title. Section 4966 provides, that any person publicly performing any dramatic composition for which a copyright has been obtained, shall be liable to damages. Section 4967 provides, that any person who shall print or publish any manuscript without the consent of the author, who is a resident of the United States, shall be liable for all damages occasioned by such publication.

In applying these statutes to the question before us, viz., whether a copyright becomes a perfected right upon the filing of the title of the book or composition with the librarian, or whether a deposit of the book is also necessary to complete that right, two points are apparent. The first is, that the letter of the law does not, in any of the statutes cited, former or present, require the book to be filed, to confer a copyright. Under all of the statutes referred to, from that of 1790 to the Revised Statutes, the words of the law refer to filing the title page, and not to the deposit of the book. The second suggestion is, that it seems to be assumed throughout all of the statutes, that a copy of the book will, and must, within a short time after filing the title page, be filed with the librarian of congress. Of this idea, section 4956 of the Revised Statutes affords an illustration. It had been enacted in the previous sections, that a copyright should be secured to authors, designers and composers; and, in this section, a definition is given, in a negative form, of the persons entitled to the benefit of the law. "No person shall be entitled to a copyright, unless he shall, before publication, deliver at the office of the librarian of congress, or deposit in the mail, addressed to the librarian of congress, * * * a printed copy of the title of the book, &c., nor unless he shall, also, within ten days from the publication thereof, deliver, &c., or deposit, &c., addressed to the librarian,

&c., two copies" of the book, &c. Any person shall be entitled to a copyright, who, before publication, first, shall deliver to the librarian a printed copy of the title of the book, and, second, shall, within ten days after the publication thereof, deliver to the librarian two copies of the same. The book may not be printed or published when the title page is filed, and some right, (inchoate perhaps,) seems intended to be secured as of that date, although an actual printing or publication is not then made. But the expression "before publication" is based upon the idea that·a printing or publishing will soon occur. This is put into clear meaning by the next clause of the section, that the author shall not be entitled to copyright, unless, "within ten days from the publication" he shall deliver two copies to the librarian. This means, that the author is required to publish his work, and, after he has so published it, and within ten days, he shall deliver two copies to the librarian. It is not a fair interpretation of this section to hold, that the filing of the title entitles to a copyright fully and absolutely, and that this may be defeated by a publication and failure to deliver two copies, but, as long as there is no publication, although it continue indefinitely, there is no lapse of the right. This construction is not permitted either by that idea which secures benefits to the author or inventor, upon the theory that the public is to be benefited, as well as himself, by his works, or by the principle pervading all this branch of the laws of patents, trade-marks, and copyrights, that an author or inventor must put his claim into the form of a well defined specification, work or composition, and so place it upon record that he cannot alter it to suit circumstances, and so that other authors and inventors may know precisely what it is that has been written or invented. The idea that an inventor may secure a patent for an invention of which he should not be required to file a specification, would not be tolerated. He may file preliminary or precautionary papers until his invention shall be completed, he may amend his specifications, and he may obtain reissues. It was never heard, however, that he could conceal the particulars of his invention, and, by filing a general statement of a discovery or improvement, cut off the rights and claims of others. The principle I conceive to be the same in regard to a copyright, and I hold, that, to secure a copyright of a book or a dramatic composition, the work must be published within a reasonable time after the filing of the title page, and two copies be delivered to the librarian. These two acts are, by the statute, made necessary to be performed, and we can no more take it upon ourselves to say that the latter is not an indispensable requisite to a copyright, than we can say it of the former.

In examining the rights of parties under the statutes of 1790 and of 1802, the court held, in Wheaton v. Peters, 8 Pet. [33 U. S.] 664, that, to secure a copyright, all the requisites of the statute must be complied with. "The acts required," say the court, "to be done by an author, to secure his right, are in the order in which they must naturally transpire. First, the title of the book is to be deposited with the clerk, and the record he makes must be inserted in the first or second page; then the public notice in the news-·papers is to be given; and, within six months after the publication of the book, a copy must be deposited in the department of state. A right undoubtedly accrues on the record being made with the clerk and the printing of it as required; but what is the nature of that right? Is it perfect? If so, the other two requisites are wholly useless. * * * But we are told they are unimportant acts. If they are indeed wholly unimportant, congress acted unwisely in requiring them to be done. But, whether they are important or not, is not for the court to determine, but the· legislature. * * * They are acts which the law requires to be done, and may this court dispense with their performance? * * * The notice could not be published until after the entry with the clerk, nor could the book be deposited with the secretary of state until it was published. But these are acts which are not less important than those which are required to be done previously. They form a part of the title, and, until they are performed, the title is not perfect. The deposit of the book in the department of state may be important to identify it at any future period, should the copyright be contested, or an unfounded claim of authorship be asserted."

The language of the Revised Statutes is stronger than that of the act of 1870. By the latter act (16 Stat. 213) it was provided, that no person should be entitled to a copyright unless he should file the title page with the librarian, "and, within ten days from the publication thereof, deposit in the mail two copies of such copyright book," &c. In the Revised Statutes, two negatives are distinctly specified, and, in either case, the defect is fatal. He must file his title page—if he fails in this, he fails in all—but he cannot then have his copyright, "unless he shall also" deliver two copies within ten days from publication. In addition to the first he must also perform the second requirement. See the opinion of Sawyer, Circuit Judge, in Parkinson v. Lasalle [Case No. 10,762]; Ewer v. Coxe [Id. 4,584]; Baker v. Taylor [Id. 782].

In this case, the title page was filed on the 26th of October, 1874. The bill, verified in February, 1875, does not allege any publication of the work, or any delivery of copies, or any reason why the same has not been done.

The complainant also insists that this action can be sustained by virtue of section 4966 of the Revised Statutes. That section provides, that any person publicly perform-

ing any dramatic composition for which a copyright has been obtained, without the consent of the proprietor, shall be liable in damages, as therein stated. If no copyright has been obtained by the complainant for this composition, there has been no violation of a right secured by this section, and he takes nothing under this claim. By the act of August 18th, 1856 (11 Stat. 138), it was enacted, that the granting of a copyright to the author of a dramatic composition should be deemed to confer upon him the sole right to perform and represent the same on any stage, during the period for which the copyright was obtained. The same power is found in section 101 of the Statutes of 1870 (16 Stat. 214). Like the exclusive right to print, the exclusive right to perform, so far as these statutes are concerned, is dependent upon the existence of a copyright.

The bill alleges, also, that the defendant has, without the consent of the complainant, printed and published eight scenes of his play, and has publicly announced his intention to sell copies of the same. This proceeding is in violation of section 4967 of the Revised Statutes, which provides, that every person who shall print or publish any manuscript without the consent of the author, if such author is a citizen of the United States, or resident therein, shall be liable to the author for all damages occasioned by such injury. The demurrer admits this publication, and the defendant must be restrained from printing or publishing the play.

The defendant seeks to avoid the effect of this allegation, by the statement, that the bill does not aver that such publication took place after the recording of the title of the complainant's play. This averment is not expressly made, but it must be taken to be the fact, upon the pleadings. It is averred, that the complainant composed and wrote the play previously to November 14th, 1874; that, in October, he filed a copy of the title page, and the librarian recorded the same in the proper book kept for that purpose; that, on the 14th of November, he caused the same to be performed at Wallack's Theatre; that he has never printed the play for circulation; and that the defendant, by means unknown to him. has obtained a knowledge of the contents of the manuscript, and, without his consent, has printed the same. The fair meaning of this is, that this action of the defendant took place after the title of the play had been deposited and recorded.

In dealing with this case, I have given no effect to the general allegation of the bill, that the "complainant has complied in all respects with the requirements of the Revised Statutes," that were necessary to enable him to copyright his composition. A demurrer admits allegations of fact only, not allegations or inferences of law. That the allegation in question is not one of fact is well illustrated by this case. Does the allegation include an averment that the complainant

has deposited with the librarian printed copies of his work as well as of his title page? If such deposit is a requirement of the statute, it does include it. If it is not, it does not include it. We are thus directed at once to the solution of a question of law instead of a point of fact. Instead of averring that he has deposited a copy of his title page, and also two copies of the body of the book, the bill alleges that the complainant has deposited a copy of his title page, and that he has never published his work, and was, therefore, not required by the statute to deposit copies of the work. This is the legal effect of the averment.

I am also of the opinion, that there has never been a publication by the complainant of this work, within the meaning of the statute. The work has not been printed by the author, nor has it been abandoned or dedicated to the public. The author has permitted and procured its representation for his own benefit, and through his selected channels. This does not amount to a publication within the statute, or a dedication to the use of the public. Coleman v. Wathen, 5 Term R. 245; Palmer v. De Witt, 2 Sweeny, 547, 47 N. Y. 532; Bartlette v. Crittenden [Case No. 1,082]; Roberts v. Myers [Id. 11,906]; Keene v. Kimball [16 Gray, 545]. The English decision (Boucicault v. Delafield, 9 Law T. N. S. 709), cited to the contrary, is based upon the peculiar language of the English statute, and is not an authority in this case.

I am of the opinion, however, that the defendant has violated the complainant's common law right of ownership in his dramatic composition. The copyright law is intended to preserve to the complainant his exclusive right to multiply copies, to publish, and, in my judgment, only attaches perfectly where a publication is made. The ownership, however, and the right of an author to retain and use his dramatic works, for his personal benefit, without publication, is a common law right. It is recognized and defined by the statutes cited, but it exists independently of the statutes. In Palmer v. De Witt, 2 Sweeny, 547, the court says: "Whatever may have been the conflict of judicial opinion upon the effect of copyright laws upon the common law rights of authors, it has never been disputed, that, by the common law, an author has, until publication, a property in his literary work, capable of being held and transmitted. and in the exclusive possession and enjoyment of which he and his assignees will be protected." In the opinion of Monell, Justice, in that case, all the authorities are collected and presented. The same case is reported in 47 N. Y. 532. It is there held, that the representation of a play on the stage is not such a publication or dedication to the public as authorizes others to print and publish it without the author's permission. The manuscript and the author's right are still within the protection of the law. The common law rights of authors to their literary

productions, as they existed at common law, are now recognized. The author has the exclusive right to the first publication of his work, but no exclusive right to multiply copies or control the subsequent issues. This latter right is the creation of the statute of the United States. Boucicault v. Fox [Case No. 1,691]; Boucicault v. Wood [Id. 1,693]. Assuming this to be so, the difficulty arises, that this court has no power to administer common law relief in a suit between citizens of the same state. The courts of the state are the proper, and, usually, the exclusive tribunals for the performance of that duty. The United States have jurisdiction of common law questions when the controversy is between citizens of different states. When the controversy is between citizens of the same state, its jurisdiction is limited to questions arising upon or under the laws or authority of the United States.

The result of my examination is, that the portions of the bill based upon alleged violations of the statute respecting copyright cannot be sustained; that the portions thereof based upon the alleged violation of section 4967 of the Revised Statutes are well laid, and the cause of action therein set forth is a good one; and that the common law right of the complainant to a protection in the performance of his play, constitutes a good cause of action, but, by reason of the parties being citizens of the same state, this court has no jurisdiction to enforce the same. The demurrer must, therefore, be overruled, and the defendant is allowed to answer within thirty days after service of a copy of the order overruling the demurrer.