## JOHNSON *v.* DONALDSON.

*(Circuit Court, S. D. New York. July 15, 1880.)*

1. COPYRIGHT—CHROMOS—EVIDENCE—REV. ST. § 4965.—In an action for penalties and forfeitures, for the breach of a copyright of certain chromos, under section 4965 of the Revised Statutes, the *defendant* cannot be compelled to produce in evidence his books of account, photographic plates and copies of printed chromos.

2. SAME—SAME.—The publication and sale of chromos designed from a picture found in a foreign publication do not constitute a breach of copyright of similar chromos where such copyright was obtained after the circulation of such foreign publication.

Motion for New Trial.

WALLACE, D. J. The plaintiff, the proprietor of a copyright of the chromos called "Taking Advantage of the Situation," brought this action against defendant for publishing and selling copies of the same without the plaintiff's consent, asking judgment for the penalties, and for the forfeiture of the plates on which the chromos were copied, pursuant to section 4965 of the Revised Statutes of the United States. Upon the trial the jury found for the defendant, and the plaintiff has moved for a new trial, alleging errors in the rulings on the trial, and insisting that the verdict was against the evidence.

Upon the trial the plaintiff attempted, by a *subpœna duces tecum*, to compel the defendant to produce his books of account, photographic plates, and the copies of the printed chromos claimed to be in his possession, to be used as evidence for the plaintiff, and the court ruled that, as the action was for penalties and a forfeiture, the defendant could not be compelled to furnish evidence against himself. It is now argued that this was error.

It would seem that the correctness of this ruling could not be seriously questioned. Section 860 of the U. S. Revised Statutes provides that "no pleading of a party, nor any discovery or evidence obtained from a party or witness by means of a judicial proceeding in this or any foreign country, shall be given in evidence, or in any manner used against him or his property or estate, in any court of the United States, in any criminal proceeding, or for the enforcement of any penalty or forfeiture." Irrespective of this statute, it would be contrary to all precedent, and a violation of one of the most familiar rules of the common law, to require a witness to furnish evidence to convict himself of a crime, or subject himself to a penalty or forfeiture. 1 Greenl. Ev. § 452. And courts of equity, when sifting the conscience of a defendant by a discovery, never require him to disclose facts which would subject him to a penalty. Daniell's Chancery, 626; Story's Eq. Pl. § 575.

The statutes which have within a comparatively recent period been enacted in England and in our own states, abrogating the rule by which parties were not competent witnesses in actions at law, are designed to place parties upon a footing of equality with other witnesses in regard to competency, but not to deprive them of the rights of ordinary witnesses. Concededly, the only purpose in view in requiring the defendant to produce his books, plates, and chromos, upon the trial, was that thereby evidence might be furnished which would enable the plaintiff to recover the penalties and forfeiture in suit. The ruling was clearly right.

The defendant gave evidence upon the trial to show that the chromos published and sold by him were designed from a picture found in a foreign publication, circulated here before the plaintiff obtained his copyright; and the jury were instructed that if the defendant did thus obtain his design the plaintiff could not recover. It is now alleged that this instruction was error.

Care was taken to instruct the jury that if the plaintiff was the author, designer, or proprietor of the chromos for which he had obtained a copyright, he was to be protected in his

property; and if the defendant's publication was copied directly or indirectly from the plaintiff's chromos, and there was a substantial identity in the design, the defendant was liable.

I see no reason to doubt the correctness of these instructions. The sketch in the foreign publication was public property, which any person could rightfully reproduce. If the plaintiff had obtained his copyright by appropriating this sketch, and recording the description, and complying with the other formal requisites of the act of congress for obtaining a copyright, he would have acquired no exclusive right to it, because he would not have been the author, designer, or proprietor of the sketch. Assuming the plaintiff to have been the artist and designer of the picture copyrighted by him, the defendant was not liable if he did not avail himself, directly or indirectly, of the plaintiff's production. A copyright secures the proprietor against the copying, by others, of the original work, but does not confer upon him a monopoly in the intellectual conception which it expresses. An artist cannot acquire such an exclusive right to the conception embodied and expressed in his picture as to preclude others from the exercise of their own creative genius or artistic skill, or from availing themselves of any part of the genial contribution of artistic production.

The law of copyright originated in the recognition of the right of another to be protected in the manuscript which is the title of his literary property. This protection could not be adequate unless he was invested with the exclusive privilege of copying the manuscript, whether for sale or for publication. It does not rest upon any theory that the author has an exclusive property in his ideas, or in the words in which he has clothed them. If each of two persons should compose a poem identically alike, he who first composed it would have no priority of title over the other, nor would he acquire priority by first publishing it. The law of copyright would protect each in his own manuscript, but would not prevent either from using his own.

An illustration in point is used by Judge Story in *Emerson*

v. *Davis,* 3 Story's Rep. 780. He says: "A man has a right to a copyright in a translation upon which he has bestowed his time and labor. To be sure, another man has an equal right to translate the original and publish his translation; but then it must be his own translation, by his own skill and labor, and not the mere use and publication of the translation already made."

So with charts, maps, and surveys. No one person can acquire an exclusive right to appropriate the information which they contain; but the one who first perfects his chart or map may insist that no other shall be permitted to appropriate the result of his labors by copying the same chart or map. *Sayre* v. *Moore,* 1 East, 361; *Blunt* v. *Patten,* 2 Paine, C. C. Rep. 397.

In actions like the present the question to be decided always is whether the defendant has availed himself of the plaintiff's production. Frequently it is necessary to determine whether the defendant's work is the result of his own labor, skill, and use of materials common to all, or an appropriation of the plaintiff's work, with colorable alterations and departures, intended to disguise the piracy. He may work on the same original materials, but he cannot evasively use those already collected and embodied by the skill, industry, and expenditures of another. *Longman* v. *Winchester,* 16 Ves. 269; *Gray* v. *Russel,* 1 Story's Rep. 11; *Banks* v. *McDivitt,* 13 Blatchf. 163.

This question was submitted to the jury and they found adversely to the plaintiff, and there was certainly sufficient testimony to sustain the finding.

The motion is denied.