DALY v. BRADY.

(Circuit Court, S. D. New York. June 24, 1895.)

1. COPYRIGHT—JURISDICTION OF COURTS.

The only jurisdiction which the federal courts have of an action between citizens of the same state to recover damages for the unauthorized public performance of a copyrighted dramatic composition is conferred by Rev. St. § 4966, and all actions at law between such parties to recover moneys, damages, or penalties are controlled by that section.

2. SAME—EVIDENCE—ACTION FOR PENALTY.

Rev. St. § 4966, is, in its nature, a penal statute, and therefore, in an action to recover the penalties prescribed thereby, evidence obtained from defendant by a prior judicial proceeding is inadmissible against him.

This was an action at law by Augustin Daly against William A. Brady to recover for alleged infringements of a copyright.

Stephen H. Olin, for plaintiff.

A. J. Dittenhoefer, for defendant.

SHIPMAN, Circuit Judge.    This action having come on regularly for trial before the circuit court of the United States for this district on May 29, 1895, and the parties, by their attorneys of record, having filed with the clerk a stipulation in writing, signed by them, waiving a jury, and consenting that the issues should be tried by the court without a jury, I, holding said court and presiding therein, thereupon took the proofs offered by the respective counsel, and hereby make the following special findings of fact and conclusions of law:

### Findings of Fact.

(1) That before August 1, 1867, the plaintiff invented and composed, and was the author of, a dramatic composition or play in five acts, entitled "Under the Gaslight," which play was original with him.

(2) That on the 1st day of August, 1867, the plaintiff, being a citizen and resident of the United States of America, and being then the sole and exclusive proprietor and owner of said dramatic composition, and the same then never having been printed, published, acted, performed, or represented, took out a copyright therefor in the United States, by depositing a printed copy of the title—viz.: "Under the Gaslight.    A Romantic Panorama of the Streets and Homes of New York"—of said composition in the clerk's office of the district court of the United States for the Southern district of New York, of which district the plaintiff was then a resident, and in all respects complied with the provisions of the existing acts of congress relating to copyrights, and received from said clerk, who then and there recorded said title as required by said acts, a certificate and record in the form required by such acts, containing the title of said composition, and that the said Daly has been continuously since said day the sole and exclusive proprietor of said dramatic composition and of said copyright.

(3) That the plaintiff subsequently, and within a reasonable time thereafter, caused the said composition to be printed and published, and within three months from the date of such printing and publication he caused a printed copy of said composition so printed and published to be delivered to and deposited with the clerk of said district court, and also to be delivered to and deposited in the library of congress, at Washington, for the use of said library, as required by said acts of congress.    The title, as published, was: "Under the Gaslight.    A Totally Original and Picturesque Drama of Love and Life in These Times."

(4) And that the plaintiff gave information of the copyright of said composition being secured to him by causing to be printed and inserted in the several copies of each and every book and edition of such book or composition so published and printed, on the title page thereof, or on the page immediately following, the following words, viz.:

"Entered according to act of congress, in the year 1867, by Augustin Daly, in the clerk's office of the district court of the United States for the Southern district of New York."

(5) That the plaintiff, in and by the aforesaid proceedings, intended to obtain, hold, and possess, and did obtain, hold, and possess, by virtue of the act of congress approved February 3, 1831, and the acts amendatory thereof and supplementary thereto, not only the sole and exclusive right and liberty to print and publish such dramatic composition and book, but also the sole and exclusive right to act, perform, or represent the said dramatic composition or play, and to cause it to be acted, performed, or represented, on any stage or public place, during the whole period for which the said copyright was obtained.

(6) That the said play was produced by the plaintiff as alleged in the complaint, and has been often produced by him, and for his profit and advantage, by his employés, or by persons licensed to produce the same; and the plaintiff has received, as fees, from different persons performing the same under his license, substantial license fees in almost every year since 1868.

(7) That the cause of the success and profit of the play was the scene and incident in the end of the third scene of the fourth act of the said composition, commonly called, after being so publicly performed, the railroad scene or sensation, in which one of the characters in said composition is represented as secured by another of the characters, and laid helpless upon the rail of a railroad track, in such a manner and with the presumed intent that the railroad train momentarily expected shall run him down and kill him, and just at the moment when such a fate seems inevitable another of the characters in the composition contrives to reach the intended victim, and to drag him from the track as the train rushes in and passes over the spot.

(8) That this incident and scene, as thus carried out, was novel, and unlike any dramatic incident known to have been theretofore represented on any stage, or invented by any author before the plaintiff.

(9) That the chief value of said composition and its popularity depend upon the said railroad scene or sensation contained in it, and upon the representation of said scene, only, which scene constituted its essential feature, and that at the times of the acts of the defendant hereinafter referred to the sole commercial value of the said play of "Under the Gaslight," and the source of its power of earning royalties, consisted of the said railway scene.

(10) That, soon after said play was produced, Dion Boucicault, a native and subject of Great Britain, without the knowledge or consent of the plaintiff, prepared a play called "After Dark," in which he introduced a railway scene varying slightly from the railway scene as it appeared in "Under the Gaslight," so as to be colorably different, but substantially the same, as alleged in the complaint.

(11) The defendant, William A. Brady, is, and at the times hereinafter mentioned was, a manager and actor. The plaintiff was at the commencement of this suit a citizen of the state of New York, and the defendant was a resident therein, whose citizenship was not averred; and this court obtains its jurisdiction, not by reason of

diverse citizenship, but solely under the copyright laws of the United States.

(12) The defendant, at the times hereinafter mentioned, without the consent of the plaintiff, produced and procured to be publicly performed and represented, in divers cities, the said play of "After Dark," including the said railway scene, which, as produced by the said defendant, was substantially the same, although colorably different from the plaintiff's play of "Under the Gaslight," as alleged in the complaint.

(13) That said play, "After Dark," has been publicly produced and represented by the said defendant and his agent in different parts of the United States without the plaintiff's consent, and that such performance and production of the said play took place 747 times between June 19, 1889, and October 4, 1892, and that, of the said 747 performances, 156 took place in or after August, 1891, and within two years of the commencement of this action, which was commenced August 23, 1893. All the evidence upon the subject of the number of these performances was obtained from the defendant, by the plaintiff's examination of him, in the accounting before the master in the equity suit hereinafter mentioned.

(14) That the plaintiff had required and received license fees for the production of the said railroad scene prior to the said infringements by the defendant. Said license fees were not uniform. They diminished as the play, in process of time, became more familiar to the public. Ten dollars for each performance of the said railway scene was the smallest and most recent fee that had been paid, and was a reasonable royalty for the defendant to have paid for the use thereof.

(15) That a portion of the royalties received by the plaintiff for the production of "Under the Gaslight" prior to the said infringements by the defendant were for the use of this scene alone.

(16) On May 20, 1889, the plaintiff brought a suit in equity against George P. Webster, William A. Brady, the present defendant, and Henry C. Miner, in the circuit court of the United States for the Southern district of New York, in which he prayed that they should be enjoined against the further performance of said play of "After Dark," upon the ground that such performance or representation was an infringement of the copyright, and for an accounting of all money and profits received from or by reason of the performances of the play "After Dark," and of the railroad scene therein. The said court, on June 19, 1889 (39 Fed. 265), denied the plaintiff's motion for an injunction pendente lite, after an appearance of the defendants and a hearing upon said motion, upon the ground that there was a material variance between the registered title and the published title of "Under the Gaslight," and that therefore the complainant had not a valid copyright. After proofs had been taken on the issues joined, the circuit court for said district followed the decision of the court upon the said motion, and dismissed the bill, with costs, on November 4, 1891. 47 Fed. 903. An appeal was taken by the plaintiff from the decree dismissing the complaint, to

the circuit court of appeals, which court, on the 4th day of October, 1892, reversed the decree of the circuit court, and remanded the cause with instructions to enter the usual decree for an accounting and perpetual injunction. 4 C. C. A. 10, 56 Fed. 483. That the said circuit court held that the complainant's copyright was valid, and had been infringed by the defendants in said play, "After Dark," by placing a character on the railroad tracks in apparent peril of his life from an approaching train, and having him rescued by another character.

(17) Pursuant to said mandate, a decree for a perpetual injunction by the circuit court was entered on November 5, 1892, and John E. Ward, Esq., one of the masters of said court, was directed to take proof of the number of performances given by the defendants, and where each performance took place, said defendants being directed to attend with their books and papers. That the defendant did attend, pursuant to the said decree of the said court, before the master, and gave evidence for the plaintiff. Upon said examination the defendant's counsel objected to the defendant's being compelled to produce the manuscript play of "After Dark," upon the ground that "neither the defendant nor his books can be used against him in any proceeding wherein it is sought to obtain a penalty, or for the purposes of this hearing before the master." The decree did not direct the master to ascertain anything in regard to profits. No evidence was offered upon that subject, and no finding was made thereon. A final decree in said cause, accepting the master's report, and making the findings of the master the findings of the court, was entered on April 1, 1893. No judgment or decree for profits was asked or rendered.

## Conclusions of Law.

1. That the copyright of the dramatic composition entitled "Under the Gaslight," obtained on August 1, 1867, by Augustin Daly, being the copyright referred to in the complaint herein, is good and valid; that said railway scene is covered and protected by said copyright.

2. That the acts of the defendant were in disregard of said copyright, and violated the plaintiff's exclusive rights thereunder, by producing and publicly representing, without the plaintiff's consent, a colorable imitation of the substantial and material portion of said "Under the Gaslight," and by using and producing the railway scene as copyrighted in the dramatic composition entitled "Under the Gaslight."

3. That section 4966 of the Revised Statutes confers upon the courts of the United States their only jurisdiction in an action between citizens of the same state for the recovery of damages for the unauthorized public performance and representation of a dramatic composition for which a copyright has been obtained. Boucicault v. Hart, 13 Blatchf. 47, Fed. Cas. No. 1,692.

4. That all actions at law in the courts of the United States, between citizens of the same state, by a proprietor of a copyrighted dramatic composition, for the recovery of moneys as damages or

penalties against a person who, without consent, has given public representations of such composition, are controlled by the provision of section 4966.

5. That the evidence does not authorize an increase of damages above the minimum amount provided by said section, and that the court, in this suit, has no power to establish a rule of damages for any representation or set of representations below the minimum provision of the statute.

6. If section 4966 is to be construed as a penal statute, the only testimony in this case in regard to the number of representations, which was the testimony of Brady in the accounting and the master's report, which is based solely upon the evidence given by the defendant before him in the equity suit, was inadmissible, upon the ground that evidence obtained from a party by means of a judicial proceeding must not be used against him for the enforcement of a penalty. Johnson v. Donaldson, 18 Blatchf. 287, 3 Fed. 22. Such evidence can be used in aid of the recovery of damages in a suit at law. Atwill v. Ferrett, 2 Blatchf. 39, Fed. Cas. No. 640.

7. Section 4966 declares that the person who violates its provisions shall be liable to damages, which are, in all cases, to be assessed at such sum, not less than $100 for the first, and $50 for every subsequent, performance, as to the court shall seem just. The amount is not to be measured by the pecuniary injury, but in all cases is to be the statutory sum, subject to be increased if the circumstances of aggravation or of injury or of willfulness shall convince the tribunal that justice requires an increase. The injury to the proprietor is but one element in the case. The phraseology of the section suggests a punitive, rather than a remedial, purpose; and the phraseology of the statute, as originally passed, in 1831 (4 Stat. 438), conveyed the same suggestion that a penalty was to be inflicted, rather than that a recompense for the injury was to be obtained. The general intent of congress, apart from proceedings in equity and from actions at law for damages for the unauthorized publication of a manuscript (section 4967), seems to have been to enforce the copyright laws by penalties and forfeitures, rather than by the ordinary common-law remedies. Section 4968 provides a limitation of two years for actions for forfeitures and penalties. If section 4966 is not a penalty, no federal statute of limitations is applicable, and it can hardly be supposed that it was the intent of congress to permit so serious a statutory rate of damages to run without federal statutory limitation. The damages in the corresponding section of the English copyright statutes (3 & 4 Wm. IV. c. 15, § 2), in which damages of 40 shillings were the minimum, are regarded as a penalty. Chatterton v. Cave, 3 App. Cas. 489. My conclusion is that the section is penal, rather than remedial, in its character.

8. That there has been in this case no accounting of profits, and no election to endeavor to obtain profits, for any representation of the dramatic composition which is the subject of this suit, and that there has been no finding and no adjudication upon the subject of profits.

9. That if the master's report, or the evidence upon which it was based, had been admissible, the plaintiff would have been entitled to judgment against the defendant in the sum of $50 for each performance falling within the period of two years prior to the commencement of this action,—that is to say, for 156 performances, the sum of $7,800,—but that there was no adequate testimony before the court upon which to found a judgment for the plaintiff, and that as the case now stands the defendant is entitled to judgment, with costs.