# 12 JEWELERS' MER. AGENCY *v.* JEWELERS' PUB. CO.

The Jewelers' Mercantile Agency (Limited), Respondent, *v.* The Jewelers' Weekly Publishing Company (now The Trades Weekly Company) and Others, Appellants.

*Copyrights — jurisdiction vested in the Federal courts — common-law property rights of an author enforced in the State courts — obtaining a copyright when a book is published — what is not a dedication thereof — hearsay evidence — objections first taken on appeal.*

It seems that the statute conferring jurisdiction upon the Federal courts in cases relating to copyrights does not affect any pre-existing jurisdiction which exists at common law, independently of all statutes.

Where a person seeks a remedy under the Copyright Law, for an injury to property rights secured thereby, the United States courts have exclusive jurisdiction, but when no remedy is sought under the Copyright Law, and the plaintiff stands upon his common-law rights, it seems that the Supreme Court of the State of New York has jurisdiction of the subject-matter of the action.

Although the initiatory steps have been taken with a view to acquiring a copyright, it is essential to the procuring of it that a publication be made within a reasonable time after entry of the title, and the deposit of two copies of the book in the office of the Librarian of Congress.

A book is published when printed copies are sold unconditionally to the public. To constitute a publication it is essential that the work be exposed for sale or gratuitously offered to the general public, so that the public, without discrimination as to persons, may have an opportunity to enjoy that for which protection is granted.

Printing in itself cannot amount to a publication, for the obvious reason that a book may be withheld from the public long after it is printed.

The books deposited in the office of the Librarian of Congress, with a view to obtaining a copyright thereon, cannot pass into general circulation, their use being specially restricted by statute — while there may be free access by the public thereto with the right to the inspection thereof, the right to take copies of the same and thus deprive the author of his property rights thereto is not permitted, and there is not, by reason of such deposit, a public dedication of the book.

An author or compiler has the right to his literary property at common law without respect to the copyright statutes, and although such right may be lost by publication, yet a person may print any number of copies of which he remains the owner, and by contract may so restrict their use by those to whom he lends them, as to retain his original rights therein.

A motion to strike out evidence given upon the trial of an action on the ground that it was hearsay is properly denied, if upon the admission of such evidence the only objection made to the reception thereof was that the evidence was immaterial and such objection was properly overruled.

It is not permitted upon the trial of an action to take a general objection to the reception of evidence, which is not good, or speculate upon what a witness may testify to, and then, if the testimony be not agreeable, to move to strike out such testimony, or upon appeal to destroy the effect thereof by presenting specific objections which would have been good had they been presented at the time the testimony was given.

APPEAL by the defendants, The Jewelers' Weekly Publishing Company (now The Trades Weekly Company) and others, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 23d day of May, 1894, upon the decision of the court, rendered after a trial at the New York Special Term, adjudging that the plaintiff has the exclusive property rights in certain reference books and confidential sheets, and that the defendants have violated such property rights, and restraining the defendants from using such books and sheets.

*Leopold Sondheim,* for the appellants.

*Howard Mansfield,* for the respondent.

O'BRIEN, J.:

The judgment appealed from enjoined the defendants from making any use of the plaintiff's reference books or confidential sheets, and from copying, appropriating, printing, publishing or using in any way information taken therefrom, or furnishing such information to others. Such judgment is based on the following facts found by the court:

The plaintiff, a domestic corporation organized in 1883, has ever since been engaged in the business of a mercantile agency, which consisted in obtaining from various sources information regarding the places of business, street addresses, particular kinds and extent of business, commercial standing and mercantile credit of individuals, firms and corporations engaged in the jewelry trade throughout the United States and Canada, and in furnishing confidentially for the use of subscribers such information. This information, obtained at considerable expense, is twice a year printed in the form of a reference book, which is furnished exclusively for the use of plaintiff's subscribers. A duplicate of smaller form is furnished upon like conditions. These books are leased to subscribers upon a contract

printed in each, which restricts the use of the book, and requires its return to the plaintiff, no copy of the book ever being sold. The plaintiff also issues weekly to subscribers a confidential sheet of changes and corrections furnished subject to the conditions of subscription.

The defendant corporation was organized in January, 1891. This corporation took over the business which before had been carried on by the defendant Rothschild, and still earlier by both of the individual defendants. Some time prior to the incorporation the individual defendants had been subscribers to the plaintiff's book, but their subscription ended in 1886, and was not renewed. Prior to the defendant's incorporation, one Keller suggested to Rothschild the issue of "A Jewelers' Weekly Complete Directory," and he was permitted to undertake the compilation of the book, without special oversight on the part of Rothschild or other officers of the corporation. Much of the information thus compiled was obtained by copying names and addresses from directories belonging to the Trow Directory Company, except for those States of which that company had no directory; and in respect to these a list of jewelers was furnished which, according to the statement of a manager of the directory company, was purchased from a lady named White without inquiring as to where she got it. This book, when printed and issued, was sold for three dollars a copy, and came in direct competition with plaintiff's reference book, for the use of which plaintiff received from subscribers seventy-five dollars a year.

Plaintiff's claim, in substance, is that the defendants unlawfully took and appropriated from its reference book, issued confidentially to its subscribers in July, 1890, certain information which was incorporated in the compilation prepared by Keller. In support thereof evidence was offered tending to show that numerous errors of fact, which had crept into the plaintiff's reference book of July, 1890, appeared in the defendant company's book. Fifteen such instances in the State of New York were testified to in detail. Some of these consisted of misspelt names and of the placing of names out of alphabetical order, which errors were identically the same as in the defendant company's book. On behalf of the defendants, in addition to testimony as to the sources from which the information was derived, already alluded to, evidence was offered to

the effect that in June, 1890, the plaintiff deposited in the copyright office with the Librarian of Congress the title of the plaintiff's reference book of July, 1890, and on the same day deposited in the office of the Librarian of Congress two copies of said reference book, and printed on the page following the title page the following notice : "Entered according to Act of Congress, in the year 1890, by The Jewelers' Mercantile Agency (Limited), in the office of the Librarian of Congress at Washington."

Upon such testimony, and the evidence appearing and the books themselves, the court below found that the defendant corporation's book contained material information, directly copied or otherwise appropriated from the plaintiff's confidential reference book, and that the information so copied and appropriated formed an important and necessary part of the defendant corporation's directory ; that such acts, unless restrained, would be a substantial injury to the plaintiff in its business, and directed the entry of the judgment appealed from.

To obtain a reversal of such judgment the defendants insist : (1) That this court has not jurisdiction to grant any relief in this action, because the work from which it is claimed information was wrongfully taken is a copyrighted work ; (2) that this action cannot be maintained by the plaintiff, because it has lost any literary property it ever had in its reference book of July, 1890, by publishing the same ; (3) that no information contained in the defendant's book was ever obtained by it or its agents in any way from any of the plaintiff's books of July, 1890, or from any of its books or sheets ; (4) that the complaint against Rothschild and Ulman must be dismissed on the merits, as the plaintiff offered no testimony to substantiate its charges made against them in its complaint.

*First.* Upon the question of jurisdiction. The plaintiff did not, in its complaint or upon the trial, invoke the Copyright Law or seek a remedy for a violation of its copyright ; it stood upon its common-law right to unpublished material in which it insisted it had always retained exclusive property. It is not necessary for us to determine whether, had it obtained a copyright, and waiving its remedy thereunder, it could stand upon its common-law right, though there appears to be authority for the proposition that the statute conferring jurisdiction in cases relating to copyrights upon the Federal

courts does not affect any pre-existing jurisdiction which exists at common law independently of all statutes. (*Isaacs* v. *Daly*, 7 J. & S. [39 N. Y. Super. Ct.] 511; *Palmer* v. *De Witt*, 47 N. Y. 532.) In the latter case it is said: "But if jurisdiction is, by the statute, conferred upon the Federal courts in a case like this, the act does not purport to and does not make the jurisdiction exclusive, or deprive State courts of jurisdiction in actions, legal or equitable, touching the common-law rights of authors. At most, the statute gives parties within its provisions and not claiming the benefits of a copyright under the laws of the United States, a cumulative remedy and a choice of tribunals. The jurisdiction of the State courts in cases in which it had before been exercised was not taken away or in any respect impaired."

There is nothing inconsistent with those cases in that of *Potter* v. *McPherson* (21 Hun, 562), relied upon by the appellants, which holds that "if the book has been copyrighted under the laws of the United States, while that would secure to the plaintiffs the right to restrain its publication by the defendant under those laws, it would not afford this court jurisdiction over the subject-matter of the controversy." *Potter* v. *McPherson* is authority for holding that where the plaintiff seeks a remedy under the Copyright Law for an injury to property rights thus secured, the United States courts have exclusive jurisdiction. Where, however, as here, no remedy is sought under the Copyright Law, but the plaintiff is standing upon its common-law rights, this court seemingly would have jurisdiction.

It is unnecessary for us authoritatively to decide this question, however, for the reason that no copyright was secured by the plaintiff. It is true that the initiatory steps were taken with a view to acquiring such rights, but the failure to make a publication essential to obtain a copyright prevented the securing of the same. As held in *Boucicault* v. *Hart* (13 Blatchf. 47), publication must be made within a reasonable time after entry of the title and deposit of the two copies. And, for a definition of publication, we find it stated in Drone on Copyright (p. 291): "A book is published when printed copies are sold unconditionally to the public. * * * To constitute a publication it is essential that the work shall be exposed for sale or gratuitously offered to the general public, so that the public, without discrimination as to persons, may have an opportunity to enjoy

that for which protection is granted. Printing itself cannot amount to a publication, for the obvious reason that a book may be withheld from the public long after it has been printed." We think, therefore, that as the plaintiff never secured a copyright, and as this would prevent the relief it has sought upon an application to the Federal courts, this court had jurisdiction to entertain the action and upon suitable proof to grant relief.

This conclusion to some extent disposes of the appellants' second assignment of error, that plaintiff, by reason of publishing its reference book in various ways, had lost any literary property it ever had therein. Thus it is insisted that by the deposit in the library of Congress of the two copies of the book the plaintiff made a complete, formal and solemn dedication of it to the public; and to support this our attention is called to the Revised Statutes of the United States, which recite what books shall compose the library of Congress, and who shall be entitled to access thereto, from which the conclusion is sought to be induced that because public inspection is allowed, and to certain persons and upon certain conditions a loan of such books may be made, this, by constituting such library a public library, operated with respect to such books deposited therein as a public dedication. The answer seems to be that books so deposited cannot pass into general circulation, their use being specially restricted by statute; and though it is true that there is a clause in the regulations of the library allowing the loaning of books upon deposit of the value thereof, this, as shown by the instructions given to the librarian by the joint committee of Congress on the library, has been expressly declared to be contrary to law. With respect to books so deposited, while there may be free access by the public and a right to inspect the same, this does not include the right or authority to take copies and thus deprive the author of his property rights therein. In other words, the distinction is clear between the right of inspection and the right to copy and use such books.

Apart, however, from this, the appellants insist that plaintiff has lost its common-law right to any literary property it ever had in its reference books, by printing and offering them to anyone who would become a subscriber, and that the mere making of a contract with the subscriber to return the book and keep the information

confidential is not sufficient to make the publication a restricted one.   In this we think the appellants overlook the facts appearing, that the book was never sold, and that its use was restricted; and though printed and issued to subscribers, this was not such a publication as would destroy the plaintiff's original property rights in the book.   We think the authorities amply support the respondent's view that both in England and in this country an author or compiler has the right to his literary property at common law without respect to the copyright statutes, and that, although such right may be lost by publication, yet a person may print any number of copies of which he remains the owner, and by contract may so restrict their use by those to whom he lends them as to retain his original rights.   This has been repeatedly held to be the law with respect to trade and other directories.   (*Kelly* v. *Morris,* L. R. [1 Eq.] 697; *Morris* v. *Ashbee,* 7 id. 34; *Prince Albert* v. *Strange,* 1 Mac. & G. 25; *Palmer* v. *De Witt,* 47 N. Y. 532; *Gold & Stock Tel. Co.* v. *Todd,* 17 Hun, 548; *Kiernan* v. *Manhattan Quotation Tel. Co.,* 50 How. Pr. 194; *Tabor* v. *Hoffman,* 118 N. Y. 30, 34; High on Inj. §§ 994, 996, 1011.)   Nor do we think that the selling, or offering to sell, the names and addresses contained in the books on envelopes sent by it to non-subscribers would constitute a publication so as to destroy the plaintiff's literary property in such books.

The contention that there is no competent evidence to show that the defendants have incorporated in their directory information obtained from plaintiff's reference book is equally unfounded.   The similarity of errors appearing in the two books could not be explained upon any theory of chance, and the number of such errors, coupled with evidence showing that the defendants Rothschild and Ulman had been guilty of a similar offense as against this same plaintiff prior to the formation of the defendant company, into which they entered as officers, if they were not the actual promoters and guiding spirits, amply justified the conclusion reached, that with respect to information which could not be obtained from Trow's State directories, the company's agent, Keller, directly or indirectly, obtained the information from plaintiff's reference book.   In this connection the defendants named, having been shown to have been the principal incorporators of the defendant corporation, to which the business previously owned by both, and which had passed into the hands of one, was

transferred, the judgment against them in the plaintiff's previous action, brought for a similar purpose, was admissible, if for no other reason than as showing knowledge on their part of plaintiff's rights, and upon the question of whether or not such incorporation was resorted to with a view of avoiding the effect of the judgment. in this action, which was one of the charges made in the complaint.

In regard to testimony as to the correct spelling of the names of jewelers, such evidence when first offered was objected to upon the ground that the plaintiff's book in which the names were contained was copyrighted; and this objection, which was made not only to such testimony, but to the plaintiff's books themselves, was of course properly overruled for the reason already stated, that the court had jurisdiction. So the objection to what the witness said as to how one of the jewelers was doing business, if placed upon the ground of hearsay, might have been good. But the objection to such evidence was that it was immaterial; and, in view of the issues, the fact which such evidence was elicited to prove was very material. It is true that at the close of the testimony in which instances in the State of New York were given of misspelt names, a motion was made to strike out as hearsay all the evidence as to what was told the witness by persons whom he saw as to their correct names. But this motion was properly denied, and for the reason stated by the trial judge, that no objection to the admission of such testimony was taken when offered. It will not do to take a general objection which is not good, or speculate upon what a witness may testify to, and then if not agreeable to the one against whom the testimony is given, move to strike out such testimony, or, upon appeal, seek to destroy the effect thereof by presenting specific objections which would have been good had they been presented at the time the testimony was given.

The only serious question presented is, whether upon the testimony which was amply sufficient to sustain the judgment as against the company, there was enough to support the complaint as against the defendants Rothschild and Ulman. The court, in two of its findings, inadvertently finds that from March, 1887, until the incorporation of the defendant company in the month of January, 1891, these defendants were engaged in publishing a newspaper circulated in the jewelry trade and kindred trades, which, at the latter date,

was transferred to the defendant corporation. Also, that between these dates Rothschild, on behalf of himself and the defendant Ulman, employed Keller to compile the directory. Upon these points the testimony of the defendants, which was not controverted, shows that Ulman and Rothschild were partners until the summer of 1889, when the latter became sole proprietor of the *Jewelers' Weekly*, and it was during this period that Keller suggested the idea of the "Jewelers' Weekly Complete Directory," which was the compilation that plaintiff complained of. These findings, however, are not of sufficient importance to justify a reversal or modification of the judgment, there being sufficient in the record to show that one of them at least, when the suggestion as to the compilation was made by Keller, frankly avowed that he did not see how it could be done without resort to plaintiff's reference book, which Keller claimed was not necessary; yet, without any supervision or examination, he permitted him to proceed with the compilation and adopted his work, which, in part, consisted of pirating information, which was the property of the plaintiff, and this compilation was adopted, printed and used by the defendants for their own benefit and to the detriment of the plaintiff. The argument that such testimony would bear equally against the other officers of the defendant company and would be as good against them as against the defendants specifically enjoined, may be true, but it would not from this follow that because the plaintiff had not enjoined them it was not entitled to relief against those whom it had made individual parties to the action.

Apart, however, from this, we think that the prior conduct of these particular defendants, Ulman and Rothschild, the former judgment obtained against them for a similar offense, and what seems to have been the well-grounded view of one of them that the compilation could not be completed without resort to the plaintiff's book, place them in a little different position from the other officers of the company.

Upon the whole case, we think the conclusion of the trial judge, that the plaintiff had exclusive rights of property in its book and in its confidential sheets and their contents, and that the publication by the defendant corporation in its directory of information, copied or appropriated from the plaintiff's reference book issued confidentially

to its subscribers in July, 1890, was a violation of the plaintiff's right of property, and tended to produce and continued to produce substantial injury to it, for which the plaintiff had no adequate remedy at law, was right and justified the issuance of the injunction. As said upon the argument, exclusive of the question of costs, which, as compared with the labor and expense entailed upon the defendants by the preparation of the record and of this appeal, was not serious, we fail to see, if the defendants' disclaimer of taking the plaintiff's property was sincere, how they would be injured by the injunction. The reason for the appeal, we think, may be furnished in the more strenuous arguments advanced, seeking for an adjudication that would leave them free to utilize the work and business which, at great expense, the plaintiff had created, and which adjudication, if in their favor, would result to their great advantage and corresponding injury to the plaintiff.

The judgment, which has determined that they have no such right to appropriate the plaintiff's property, is supported, and, we think, in all respects right, and should be affirmed, with costs.

VAN BRUNT, P. J., and FOLLETT, J., concurred.

Judgment affirmed, with costs.