### LARROWE-LOISETTE v. O'LOUGHLIN et al.

(Circuit Court, S. D. New York. June 22, 1898.)

1. COPYRIGHTS—WHAT CONSTITUTES PREVIOUS PUBLICATION — RESTRICTION ON USE BY PURCHASER.

The selling of copies of a book by the author to all persons paying him for a course of instruction connected therewith, during a number of years, constitutes a publication which deprives him of the right to subsequently obtain a copyright, though each purchaser was bound by contract not to communicate the contents of the book to any one else.

2. JURISDICTION OF FEDERAL COURTS—COPYRIGHTS.

After a federal court has determined, in an action for the infringement, that a copyright is invalid, it has no jurisdiction, as between parties who are citizens of the same state, to grant relief on other grounds.

Swayne & Swayne, for complainant.

Philip Carpenter, for defendants.

TOWNSEND, District Judge. The complainant herein, being the widow, executrix, and sole beneficiary under the will of Alphonse Loisette, in September, 1896, duly copyrighted a work entitled "Assimilative Memory; or How to Attend and Never Forget,"—of which work her late husband was the author. She brings this bill to restrain the defendants from selling a work entitled—"Memory: A Scientific Practical Method of Cultivating the Faculties of Attention, Recollection, and Retention. By A. Loisette,"—published and sold by defendants during the years 1895 and 1896, and advertised as a system devised by said Loisette.

There was an agreed statement, in which the following facts were admitted:

Loisette was the author of a system for training the memory, which he taught extensively for many years by means of lectures, correspondence, and pamphlets, and prior to 1894 Loisette did not distribute, sell, or give away any copies of these pamphlets, unless the person receiving such pamphlet previously signed one of these contracts, namely: "In consideration of Professor A. Loisette undertaking to teach me his system of memory, in his own way in every respect, I do hereby promise that I will not communicate to any person whatsoever any idea or part of his system of memory, without his previous consent therefor in writing; and I further agree to pay said Professor Loisette, his heirs, executors, administrators, and assigns, the sum of five hundred dollars, as liquidated damages, for each and every person to whom I may communicate any idea or part of his said system of memory, without said written consent." Prior to 1886 said Loisette duly registered at Stationers' Hall, London, England, sheets containing his lectures and exercises by entering the titles thereof; and he subsequently printed, prior to 1886, second and third editions, in sheet and pamphlet form, containing additional matter, upon the pages of which was printed, "Entered at Stationers' Hall. Prof. A. Loisette." "No copies of either of said editions were ever filed either at Stationers' Hall or in any of the public libraries of Great Britain or in the British Museum." In 1886 he printed a fourth edition of these pamphlets, and entered the title pages thereof in the office of the librarian of congress at Washington, but, owing to the negligence of his agent, no copies thereof were ever transmitted to Washington. On these pamphlets were printed both the English and United States copyright notices. No persons except those who had previously signed a copy of the above contract ever had access either to said pamphlets claimed to have been copyrighted in England or those claimed to have been copyrighted in this country prior to 1894, except where a purchaser from Loisette allowed such pamphlets to be read irrespective of his contract.

Some two years after this edition was printed, Loisette first learned that said copies had not been transmitted to Washington, and he then published another edition or reprint of said edition of 1886 without said copyright notices. "However, Loisette continued after this time to circulate his edition, bearing the English and American copyright marks, and, further than that, he mixed the two editions indiscriminately, and sent out sets having parts of each, some bearing the copyright mark and some not." "Sets have also been put out by Loisette wherein some of the parts or books were of the edition above referred to which have borne the 'Copyright, 1896,' print, and some were not: some were of the edition above referred to, which have borne the 'Entered at Stationers' Hall' print, and some were not; and some have had no copyright print upon them of either England or America, while others of the same set issued have had both." "Of all of these editions, some of the books or pamphlets bore the notice, 'These lesson papers must not be shown to any one;' others bore this notice, 'Printed solely for the pupils of A. Loisette.' Some had both notices, and others had neither of these notices, nor any such notice, upon them." Thereafter Loisette issued two other editions, each consisting largely of a reprint of said edition of 1886, the later of which was duly copyrighted by the complainant, and is the one as to which infringement is alleged. The work published by defendants was copied entirely from said editions of 1886, without the consent of said Loisette or of complainant. Defendants never purchased said pamphlets from Loisette; were never bound by said contract hereinbefore set forth; and were ignorant of any publication other than the one of 1886, from which they made their copy.

There are some ambiguities in the agreed statement of facts. Although it appears that defendants either procured said pamphlets prior to 1894 from some purchaser from Loisette under said contract, or in 1894, or thereafter, when said work had been copyrighted; it does not necessarily appear that such pamphlets bore any notice of any restriction under said contract. If it can be assumed that, as some of the pamphlets of all the editions bore some notice, and that, although some bore no notice, defendants probably purchased a complete set of pamphlets of a single edition, and therefore had notice of the restriction upon some one of the pamphlets, and were therefore chargeable with notice of such restriction as to the series,—facts which do not seem to be sufficiently proved,—the question is presented as to how far such restriction affects the rights of defendants, who "were ignorant of any publication other than the one of 1886, from which they made their copy." It does not appear that defendants may not have copied the 1886 matter from the 1893 edition after Loisette had published, copyrighted, and publicly sold the work without any contract restriction. Although Loisette failed to comply with the requirement of the copyright statutes in England as to filing copies of his work in certain libraries, this did not affect the copyright, but only made him liable to a penalty for such failure. 5 & 6 Vict. c. 45, § 10. Loisette duly registered one edition of said work in England at Stationers' Hall in 1893, and on the official book at Stationers' Hall appears the entry, "Loisettian School of Instantaneous Memory, 2d Edition, published December 29th, 1893," and on every copy of said edition he stated that it was so registered.

No literary work can be lawfully registered in England before it is published. Drone, Copyr. 279; Correspondents' Newspaper Co. v. Saunders, 11 Jur. (N. S.) 540. It must therefore be assumed that the edition of 1883 was published in England. By this publication Loi-

sette forfeited his claim to a subsequent copyright in this country of the matter therein contained. In 1886, Loisette entered the title pages of the edition of 1886, of which defendants' edition is a copy, in the office of the librarian of congress at Washington; but although, through the negligence of his agent, he never filed the copies of said pamphlets as required by law, yet, after notice that such copies were never filed, he has circulated said pamphlets, bearing, not only an English copyright notice, but also a United States copyright notice, thereby subjecting himself to liability for a penalty of $100, and has also published another edition without such notices. Loisette charged each person who took up this study individually, $25 for the course. He charged those who attended his lectures at his rooms in the day-time, $15 each for the course; those who attended his classes at his rooms in the evening, $10 each for the course; and those who were members of correspondence classes of 10 or more persons, $5 each for the course. Each person received a set of pamphlets containing the system, with directions for putting it into use, and with exercises upon the same.

From the agreed statement of facts it appears, therefore, that Loisette advertised widely and furnished a copy of his book to any one who paid him $25. Those who chose to form classes of 10 could obtain a book for $10. The books were sold absolutely; no restriction being placed upon the title or upon their use other than the contract not to communicate to any person any idea or part of Loisette's system of memory. I think this distribution amounted to publication. To hold that a person may offer a book to every person in the world who will buy it and pay a certain price for it with an agreement not to show it to any other person, and that this course of distribution might be continued for many years, and then a copyright secured for the legal term, would be a large advance upon, and wide departure from, any decisions which have been cited in this case. In most, if not quite, all the cases in which a distribution has been held not to be a publication, the author did not part with the title to the books distributed.

Complainant's brief probably states her case as strongly as it can be stated, and quotes the most pertinent authority to maintain her position, but she furnishes no precedent which sustains her contention. This book was exposed for sale so that the public, without discrimination as to persons, might have an opportunity to enjoy it, within the meaning of Drone, Copyr. p. 91. In Jewelers' Mercantile Agency v. Jewelers' Weekly Pub. Co., 84 Hun, 12, 32 N. Y. Supp. 41, where the book remained the property of the plaintiff, and the respondent contracted for its return, Judge O'Brien says:

"We think the appellants overlook the fact appearing, that the book was never sold. * * * This was not such a publication as would destroy the plaintiff's original property rights in the book. * * * A person may print any number of copies of which he remains the owner, and by contract may so restrict their use, by those to whom he lends them, as to retain his original rights."

But the Jewelers' Mercantile Agency Case was taken to the court of appeals of New York, and since the argument in this court has been decided by that court. 49 N. E. 872. That court says:

"Out of a few cases of the same general character seems to have grown the idea that it is possible for a man, by putting restrictions on the use of his books by subscribers, however numerous they may be, to retain in him forever the common-law right of first publication. If that position be sustained by the judgment of the courts, then will have been obtained judicial legislation of far broader scope and much greater value to authors and others than that offered by the copyright statute."

The opinion in that case is an exhaustive one, and is applicable to the one at bar; and if that decision is correct, as I believe it is, there was a publication in the present case, and the copyright is void.

Furthermore, the notice in the edition of 1886, that it was copyrighted in England, was equivalent to a notice that it had been published therein, and I think that the notice of a United States copyright, known by Loisette to be untrue, estops his representatives from denying that it was published here.

Complainant's counsel insisted that defendants could only have obtained a copy of Loisette's work, from which to make the publication sought to be prohibited, by means of a breach of trust, and that, therefore, they should be enjoined. The jurisdiction of this court is founded only on copyright, and there is no copyright. Complainant and the principal defendants are alleged to be citizens of New York, and if complainant has any cause of action founded on breach of trust, which the decision in the Jewelers' Agency Case would seem to indicate that she has not, her place to prosecute it is in the courts of New York, rather than in those of the United States.