DATA CASH SYSTEMS, INC., a Florida Corporation, Plaintiff–Appellant,

v.

JS&A GROUP, INC., an Illinois Corporation, Joseph Sugarman and Mary Stanke, Defendants–Appellees.

No. 80–1085.

United States Court of Appeals, Seventh Circuit.

Argued May 7, 1980.

Decided Sept. 2, 1980.

Geraldine Soat Brown, Chicago, Ill., for plaintiff–appellant.

George H. Gerstman, Chicago, Ill., for defendants–appellees.

Before SWYGERT and CUMMINGS, Circuit Judges, and NICHOLS, Associate Judge.*

---

* The Honorable Philip Nichols, Jr., Associate Judge of the United States Court of Claims, is sitting by designation.

NICHOLS, Associate Judge.

This is an appeal from an order of the district court denying plaintiff's motion for a preliminary injunction and granting defendants' motion for summary judgment on Count I of plaintiff's complaint, a claim of copyright infringement. We affirm the result of the district court, but we do so on different grounds. Proceedings on Count II of plaintiff's complaint, a claim of unfair competition, are suspended pending resolution of this appeal.

■ The parties posit jurisdiction on 28 U.S.C. § 1292(a)(1) providing for appeals from interlocutory orders " * * * granting, continuing, modifying, refusing, or dissolving injunctions * * *." The order of the district court is appealable in its entirety. This conclusion is consistent with both *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 461 F.2d 1040 (2d Cir. 1972) and *Helene Curtis Industries, Inc. v. Church & Dwight Co.*, 560 F.2d 1325 (7th Cir. 1977), cert. denied, 434 U.S. 1070, 98 S.Ct. 1252, 55 L.Ed.2d 772 (1978). In *Abercrombie & Fitch*, the district court by summary judgment narrowed a count of plaintiff's petition without expressly denying plaintiff's prayer for injunctive relief. The order was held appealable as effectively a final denial of injunctive relief. The only significant distinction in the instant action strengthens the case for interlocutory appeal. In the instant case the denial of injunctive relief was express.

In *Helene Curtis Industries* we find the interlocutory appeal of a grant of a preliminary injunction coupled with an order severing trial issues. Interlocutory appeal of the severance order was denied because the issues in that order were "too remote and unrelated to the issues on appeal." *Helene Curtis Industries, supra* at 1337. In the instant case the issues disposed of by summary judgment were the basis for the denial of the preliminary injunction.

Turning to the merits on appeal, we summarize the facts of this case. In 1976, plaintiff contracted with D. B. Goodrich and Associates for the creation of a computer program for a computer chess game. During 1976 and 1977, D. B. Goodrich developed such a program called the "Chess One–Move Calculation" (Program).

The program developed for plaintiff was capable of receiving the player's instructions, determining the computer's possible legal moves, choosing among the permissible moves in accordance with tactical principles, and displaying the computer's move. All of the above could be performed at six different levels of expertise. Needless to say, the development of the "Chess One–Move Calculation" involved considerable human time, effort, and ingenuity.

Typically, a computer program evolves through several stages of development before reaching its final form. Initially, the programmer develops a "flow chart," a schematic representation of the program logic. The next step is to render those instructions into a "source code," a programming language such as FORTRAN or COBOL. The source program is then translated into an assembly language or machine language, a series of "ones" and "zeros." Finally, the program is stored in some mechanical medium such as magnetic tape or disk. In this case the final storage medium was in the form of Read–Only–Memory chips (ROM). The ROM is a silicon chip which has been chemically imprinted with tiny switches, an assembly language "one" becoming a connection and a "zero" becoming the absence of a connection.

General Instruments Corporation manufactured the ROM's for plaintiff and they were electrically integrated into plaintiff's game. Marketing of plaintiff's game, CompuChess, began in the fall of 1977 and continued successfully into 1978.

In June of 1978, it came to the attention of plaintiff that a Hong Kong company claimed to be licensed to sell CompuChess at a lower price. Plaintiff learned from General Instruments that it was manufacturing a ROM for another chess game. At plaintiff's request, General Instruments tested the new ROM and found it to be identical to plaintiff's. Upon further inquiry, plaintiff learned that the other chess

game was using a ROM made by General Instruments and was being manufactured by Novag Industries of Hong Kong for JS&A Industries to be marketed as JS&A Computer Chess.

Plaintiff's attempts followed to prevent the manufacture and marketing of JS&A Computer Chess. These efforts were unsuccessful.

In late 1978, JS&A began marketing its computer chess. Shortly thereafter, plaintiff filed this suit for copyright infringement and unfair competition. Defendants moved for summary judgment on both counts of plaintiff's petition on April 13, 1979.

The district court granted the motion for summary judgment for defendants on the grounds that the ROM was not a "copy" under the copyright law so that reproduction of the ROM could not be an infringement. The parties had neither briefed nor argued that issue and neither side on appeal defends the district court's position, so we do not consider it further. The parties focused their arguments in the district court and on appeal to whether the program had entered the public domain prior to the duplication, such that plaintiff's copyright had been forfeited. The prevailing party in the lower court may rely on any ground that supports the decision. *Dandridge v. Williams*, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); *Moraine Products v. ICI America, Inc.*, 538 F.2d 134, 149 (7th Cir.), *cert. denied*, 429 U.S. 941, 97 S.Ct. 357, 50 L.Ed.2d 310 (1976). Since we find the forfeiture issue dispositive, we do not reach the merits of the district court's decision.

There seems to be no dispute regarding the facts relevant to the issue of whether the program entered the public domain prior to duplication by defendants. The program, in the form of the ROM, was integrated into the CompuChess game, was distributed, and was sold to the general public without restriction in 1977. Over 2,500 CompuChess games were sold that year. Nowhere on the ROM, the game board, the packaging, or the accompanying instructions was there copyright notice. Plaintiff

says it did not know that it was possible to read the program, as defendants did, if one had only the ROM. Defendants point out that a purchaser of the CompuChess who removed the ROM and unloaded its contents so as to see a printout of the program would not see a copyright notice because none was there. Plaintiff does not deny this, stating only that the printed readout copies generated by plaintiff and D. B. Goodrich were imprinted with copyright notice. But these were on internal documents and did not inform the public of plaintiff's claim. It does not seem to be denied that a copyright notice could have been placed in the ROM so that one who read out the game could not miss seeing it, and we understand this is now done. Of course a notice on the game board or the printed instructions would have presented no difficulty. Nonetheless plaintiff contends that the program has not entered the public domain.

The first question for decision is whether the applicable law is the Copyright Act of 1909, Act of March 4, 1909, ch. 320, 35 Stat. 1077 (1909 Act), or the Copyright Act of 1976 (1976 Act). This new law, Pub.L.No. 94–553, 17 U.S.C. § 101 and ff, had an effective date January 1, 1978. See "Historical Note" before § 101. Plaintiff contends that the applicable law is the 1976 Act. The basis of plaintiff's argument is that if publication of the program occurred at all, it was not until after January 1, 1978. From this premise, plaintiff argues that under the 1976 Act, plaintiff complied with all notice requirements and that even absent notice, publication would not result in forfeiture. Regardless of the merits of plaintiff's characterization of the effect of the 1976 Act, we find that that Act is inapplicable.

█ The foundation for plaintiff's assertion that the 1976 Act applies is the fact that there is no evidence that the public had seen a printout of the program before it was sent by Novag Industries to General Instruments Corporation in early 1978. For this reason, they argue that there was no publication in 1977 and that, therefore,

their common law copyright survived into 1978. Plaintiff would, of course, recognize that if the program went into the public domain prior to January 1, 1978, no copyright protection would be afforded by the 1976 Act. Furthermore, the determination as to whether a work entered the public domain prior to the effective date of the 1976 Act must be made according to the copyright law, common law and statutory, as it existed prior to the 1976 Act. 1 *Nimmer on Copyright* § 2.03[H] (1979).

■ While there is some philosophical appeal to plaintiff's contention that the absence of copyright notice is irrelevant until someone doesn't see any notice, a proposition akin to the epistemological query after whether a falling tree makes a sound when there is no one to hear it, we cannot accept plaintiff's assertion. While the 1909 Act did not define "publication," the "date of publication" was defined by section 26 of that Act as " * * * the earliest date when copies of the first authorized edition were placed on sale, sold, or publicly distributed by the proprietor * * *." Act of March 4, 1909, ch. 320, § 62, 35 Stat. 1087. For example, in *Advisers, Inc. v. Wiesen–Hart, Inc.,* 238 F.2d 706 (6th Cir. 1956), *cert. denied,* 353 U.S. 949, 77 S.Ct. 861, 1 L.Ed.2d 858 (1957), the date of publication was the date of distribution of a book to retailers, not four months later when the retailers actually distributed the books to the public. Thus, the focus would seem to be upon the date when the copyright proprietor sacrificed control of the work such that anyone who wished to view the work could do so, not upon when the public actually viewed the work. Plaintiff's argument would make the time of publication hinge on proof of when some member of the public not only could have viewed the program, but also did in fact view it. In 1977, plaintiff sold over 2,500 CompuChess units to the public without restriction. We do not know whether anyone unloaded the ROM and viewed the program during that year. The point is that plaintiff so gave up control that anyone who wished to do so could have seen the program in 1977, albeit by a technical process of some complexity. We have

concluded that there is no legally significant factual difference between 1977 and 1978 as to the states of affairs relative to the dedication issue. Therefore, the determination as to whether there was, in fact, a dedication is to be determined under the law as it existed prior to the 1976 Act.

■ Under the 1909 Act, statutory copyright could be obtained by publication with notice. Act of March 4, 1909, ch. 320, § 9, 35 Stat. 1077. Of course publication without notice resulted in forfeiture of the copyright. 2 *Nimmer on Copyright* § 714[A] (1979). Plaintiff correctly states, however, that a "limited publication" without notice does not divest the proprietor of copyright. 1 *Nimmer on Copyright,* § 4.13[A] (1979). Plaintiff asserts that the public distribution of the CompuChess was, at most, a limited publication.

An oft–quoted formulation of the doctrine of limited publication is found in *White v. Kimmel,* 193 F.2d 744 (9th Cir.), *cert. denied,* 343 U.S. 957, 72 S.Ct. 1052, 96 L.Ed. 1357 (1952), stating:

> * * * [A] limited publication which communicates the contents of a manuscript to a definitely selected group and for a limited purpose, and without the right of diffusion, reproduction, distribution or sale, is considered a "limited publication," which does not result in loss of the author's common–law right to his manuscript; but that the circulation must be restricted both as to persons and purpose, or it can not be called a private or limited publication. * * * [*Id.* at 746–47.]

There is no question but that had the "Chess One–Move Calculation" been marketed in the form of a manuscript, perhaps for home computer enthusiasts to program into their computers, the program would have entered the public domain. In none of the cases discussed by either side was a limited publication found where distribution of printed copies was as unrestricted in scope as to persons and purpose as was the distribution of the CompuChess. *See e. g., King v. Mister Maestro,* 224 F.Supp. 101

(S.D.N.Y.1963); *Schellberg v. Empringham,* 36 F.2d 991 (S.D.N.Y.1929); *Burnett v. Lambino,* 204 F.Supp. 327 (S.D.N.Y.1962).

The only way we could find that plaintiff's distribution of CompuChess was a limited distribution of the program would be to find, as urged by plaintiff, that restrictions are to be implied from the nature of the CompuChess.

The core of plaintiff's argument is that at the time the CompuChess was first marketed it was not known by any of plaintiff's officers that the ROM could be copied without obtaining a printout from the plaintiff. They unfortunately relied, as they admit, on their assumption that the ROM was not susceptible of being copied. It is further stressed that plaintiff, upon learning of this possibility, took all reasonable steps to prevent duplication and to inform others of plaintiff's claim. Finally, plaintiff asserts that defendants were not misled by the absence of copyright notice.

■ In response to plaintiff's assertion that plaintiff did not know that the ROM could be copied directly, it need only be said that dedication is a question of law, not the intent of the proprietor. *National Comics Publications, Inc. v. Fawcett Publications, Inc.,* 191 F.2d 594 (2d Cir. 1951); 2 *Nimmer on Copyright,* § 4.13[D] (1979). As to plaintiff's efforts to notify defendants and others of plaintiff's claim, these efforts not only were subsequent to the program's entry into the public domain, but also followed the alleged infringement. Finally, there is no evidence supporting plaintiff's assertion that defendants were not misled by the absence of copyright notice. Furthermore, absence of copyright notice was fatal under the 1909 Act whether or not anyone was misled thereby. 2 *Nimmer on Copyright* § 7.14[A] (1979).

It must be borne in mind that a "limited publication" is really in the eyes of the law no publication at all. Without publication, under the 1909 Act the statutory durational limitations would not start to run. As long as there was no publication, a common law copyright of unlimited duration would be available. Furthermore, statutory copy-right limitations would continue to be available to plaintiff at any time plaintiff decided to publish with notice, the time of statutory protection only then starting to run. If the acts the plaintiff admits to effected this result, plaintiff has its cake and eats it too. This would be inconsistent with one of the principles at the heart of copyright law, " * * * [i]n order to induce the author to disclose his work to the public notwithstanding the resulting loss of his common law protection, the statute substitutes new rights, albeit limited in time." A. Latman, the Copyright Law: Howell's Copyright Law Revisited 112 (5th ed. 1979). We conclude that the concept of "limited publication" is not here applicable.

■ Finally, plaintiff contends that even if there was publication without notice, the absence of notice is excused under section 21 of the 1909 Act. That section provided, in part:

> Where the copyright proprietor has sought to comply with the provisions of this title with respect to notice, the omission by accident or mistake of the prescribed notice from a particular copy or copies shall not invalidate the copyright * * *.

Even if we were to agree with plaintiff that the erroneous belief that the program could not be copied directly from the ROM was the sort of "mistake" contemplated by section 21, we cannot agree that the omission of notice was from a "particular copy or copies" of the program. In no case cited by plaintiff or encountered in our research has section 21 of the 1909 Act been found to prevent divestiture where notice was totally absent from all public copies of a work. Plaintiff cites *Monogram Models, Inc. v. Industro Motive Corp.,* 492 F.2d 1281 (6th Cir.), *cert. denied,* 419 U.S. 843, 95 S.Ct. 76, 42 L.Ed.2d 71 (1974), where model airplane kits were sold without notice affixed to the airplane parts. However, copyright notice did appear on the instruction sheets and containers. In *Herbert Rosenthal Jewelry Corp. v. Grossbardt,* 428 F.2d 551 (2d Cir. 1970), section 21 was held to prevent forfei-

ture where only five of three hundred pins were marketed with copyright notice obliterated. By contrast, section 21 does not prevent forfeiture where, as here, notice was omitted from all copies. *United Thrift Plan v. National Thrift Plan*, 34 F.2d 300 (E.D.N.Y.1929); *Lopez v. Electrical Rebuilders, Inc.*, 416 F.Supp. 1133 (C.D.Cal. 1976).

Plaintiff is not in the position of one the statute in section 21 sought to protect. It did not make an effort to comply and fail, through inadvertence or mistake, to comply completely. It made no effort to comply because it thought it was physically impossible to make a copy. It might, but did not, have provided a notice in case its assumption as to the technical limitations of others proved incorrect. Reliance on a more backward state of the art than the facts would have justified is not a covered case. We cannot award the defendants any accolades for their ethics, but this is not the statutory standard. The arts of the copyist, and his technical resources, were continually advancing in 1909, and have continued since. If Congress had meant to provide that notice would be unnecessary whenever the copyist's techniques were subjectively deemed inadequate to make a copy, it would have said so. We cannot supply the omission.

In conclusion, for the reasons discussed in this opinion, we affirm the district court's grant of summary judgment for defendants and denial of plaintiff's request for injunctive relief. The case is remanded for proceedings on Count II of the complaint.