TECHNICON MEDICAL INFORMA-TION SYSTEMS CORP.,
Plaintiff-Appellee,

v.

GREEN BAY PACKAGING INC., St. Vincent Hospital, and Leo N. Crowley, Defendants-Appellants.

No. 81–1469.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 26, 1981.

Decided Aug. 30, 1982.

Certiorari Denied Jan. 10, 1983.

See 103 S.Ct. 732.

"Whether the acts of (1) affixing to certain documents a statutory notice of copyright including the prescribed year date of first publication, pursuant to the 1909 Copyright Act and the Universal Copyright Convention, and (2) publishing the documents, estop the party who affixed the notice and published the documents from subsequently asserting that such documents have not been generally published as represented by the copyright notice, but instead contain subject matter which is 'trade secret.' "

The plaintiff-appellee filed this suit alleging, *inter alia*, that defendants had misappropriated certain trade secrets relating to plaintiff's computer software. The plaintiff had provided computerized business office services to certain hospitals (including defendant St. Vincent Hospital) and defendant Green Bay Packaging Incorporated had contracted with plaintiff to provide data processing services for those customers. Plaintiff prepared and disseminated to its customers a System Reference Manual to enable them to properly use its computerized system. The complaint alleged that defendant St. Vincent Hospital improperly provided defendant Green Bay with the manual and that Green Bay misappropriated trade secrets contained therein.

James B. Blanchard, Chicago, Ill., for defendants-appellants.

Henry C. Bunsow, Townsend & Townsend, San Francisco, Cal., for plaintiff-appellee.

Before PELL and CUDAHY, Circuit Judges, and CAMPBELL,* Senior District Judge.

WILLIAM J. CAMPBELL, Senior District Judge.

This cause is before the Court on an interlocutory appeal which presents the following certified question:

The manual contained a proprietary legend [1] and a copyright notice: "(c) Technicon Medical Information Systems Corp. 1974." Defendants contend that by placing the copyright notice in the manual, the plaintiff represented that the contents had been published in the year stated. That representation, defendants argue, is inconsistent with the assertion that the material in the manual includes trade secrets and therefore the plaintiff should be estopped from proceeding on a theory of misappropriation of trade

---

* Senior District Judge William J. Campbell of the Northern District of Illinois is sitting by designation.

1. The proprietary legend states:
"The information and designs disclosed herein, except as to vendor proprietary parts, are proprietary to Technicon Medical Information Systems Corp., and shall not be duplicated, used or disclosed, in whole or in part, except with the expressed permission of the owner."

secrets. The plaintiff's position is that the manual was never published within the meaning of the Copyright Act of 1909,[2] and that the copyright notice was only included for protection in the event that an inadvertent publication occurred. Thus, plaintiff contends, the manual can contain trade secrets and it should be permitted to present evidence on that factual issue.

The defendants presented their estoppel argument to the district court in a Motion for Summary Judgment but did not prevail.[3] However, the District Judge noted that this was a question of first impression[4] and subsequently authorized this interlocutory appeal.

Appellants contend that the certified question should be answered in the affirmative, based on the statutory estoppel doctrine utilized in *Exchange Trust Co. v. Drainage Dist. No. 7*, 278 U.S. 421, 49 S.Ct. 181, 73 L.Ed. 436 (1929); *Magee v. United States*, 282 U.S. 432, 51 S.Ct. 195, 75 L.Ed. 442 (1931); *Littleton v. Mardigan*, 458 F.2d 251 (7th Cir. 1972); *Wheelock v. Commissioner of Internal Revenue*, 77 F.2d 474 (5th Cir. 1935); *United States v. Kassan*, 208 F.Supp. 858 (S.D.Cal.1962). In their initial brief appellants summarize this estoppel principle as "one who invokes statutory benefits by the making of representations will be estopped to deny such representations," Appellants' br. p. 10. However, in their reply brief they characterize it as "where a person has affirmatively claimed and received the benefit of a statute, that person will be estopped from subsequently denying or repudiating the effects or consequences of such claim, regardless of person-

al reliance," Appellants' Reply br. p. 6. Our analysis of the cases cited indicates that the application of statutory estoppel requires the presence of three elements:

   1) assertion by a party of entitlement to statutory right or privilege;

   2) the receipt by that party of an actual benefit pursuant to the statute;

   3) subsequent assertion by that party which is inconsistent with entitlement to the statutory benefit previously received.

For example, in *Littleton*, the plaintiff was a truck driver who was injured by another driver while on his job. He filed a claim against his employer, Calumet Trucking Company, under Indiana's Workmen's Compensation Act and received monetary benefits. In filing that claim, the plaintiff had to assert, of course, that he was an employee of Calumet. Subsequently, he brought a civil action against the other driver. Under the Indiana Workmen's Compensation Act, one who had received compensation could still sue a potentially liable party for damages unless it was the employer or a fellow employee. The District Court granted summary judgment for the defendant. This court affirmed, finding that the undisputed facts revealed that the defendant was an employee of Calumet and holding that the plaintiff was estopped, by his conduct in claiming and receiving benefits under the Indiana Workmen's Compensation Act, from denying that he was an employee of the same company. Thus, having claimed entitlement to a statutory right and accepted a benefit thereby, the plaintiff was estopped from making an assertion inconsistent with that entitlement.

**2.** The parties agree that the 1909 Copyright Act applies to the facts of this case.

**3.** The court did grant defendants' Motion for Summary Judgment on plaintiff's claim for common law copyright protection. This aspect of the court's decision is not at issue in this appeal and therefore we do not comment upon it.

**4.** The District Court suggested in its memorandum opinion on defendants' Motion for Summary Judgment that this was also a case of last impression since it involved the "old" Copyright Act. Unfortunately, this was wishful thinking since we have received an *amicus cu-*

*riae* brief from Arthur Young & Company which states that "it is a party to other litigation which this court's decision would affect," *amicus curiae* br. p. 1. Additionally, a very similar issue was raised (although apparently not argued in terms of estoppel) in *Management Science America, Inc. v. Cyborg Systems, Inc.*, 6 CLSR 921 (N.D.Ill.1978). Despite the District Judge's laudable wishful thinking, this question could arise again since the 1909 Copyright Act is still relevant for "undertakings commenced before January 1, 1978," see 17 U.S.C. § 301(b)(2).

Appellant argues that under the 1909 Copyright Act one who has affixed a copyright notice to a work and published it has affirmatively claimed and received the benefit of the Act and should be estopped from claiming that trade secrets are contained therein. The alleged inconsistency in the latter assertion arises from the principle that "information disclosed [in a copyrighted work] is lodged in the public domain, where its use is unrestricted," *Crume v. Pacific Mutual Life Insurance Co.*, 140 F.2d 182, 183 (7th Cir.), *cert. den.*, 322 U.S. 755, 64 S.Ct. 1265, 88 L.Ed. 1584 (1944). Additionally, appellants contend that it is inconsistent to represent that certain material has been published for purposes of the Copyright Act and to claim that the information contained therein is also secret.

There does not appear to be any dispute that the affixing of a copyright notice consists of an assertion of a statutory right, *Goodis v. United Artists Television, Inc.*, 425 F.2d 397, 403 (2nd Cir. 1970). Therefore, the first element of statutory estoppel is present.

We must then determine whether a person who has published a work with notice has received an actual benefit under the 1909 Copyright Act. In order to perfect its copyright under the 1909 Act, a party must "generally publish" the work with a proper notice affixed, 17 U.S.C. § 10 (1976), *The Washingtonian Publishing Co. v. Pearson*, 306 U.S. 30, 59 S.Ct. 397, 83 L.Ed. 470 (1939); *Bell v. Combined Registry Company*, 397 F.Supp. 1241 (N.D.Ill.), aff'd 536 F.2d 164 (7th Cir.), *cert. den.*, 429 U.S. 1001, 97 S.Ct. 530, 50 L.Ed.2d 612 (1976). A general publication

"occurs when by consent of the copyright owner the original or tangible copies of a work are sold, leased, loaned, given away or otherwise made available to the general public, or when an authorized offer is made to dispose of the work

in any such manner even if a sale or other such disposition does not, in fact, occur." 1 Nimmer on Copyright § 4.04 (1981).

The publication requirement of 17 U.S.C. § 10 (1976) is not satisfied when the distribution of the work is only a "limited publication," *White v. Kimmel*, 193 F.2d 744 (9th Cir.), *cert. den.*, 343 U.S. 957, 72 S.Ct. 1052, 96 L.Ed. 1357 (1952); *Data Cash Systems, Inc. v. JS&A Group, Inc.*, 628 F.2d 1038 (7th Cir. 1980); *Hub Floral Corporation v. Royal Brass Corporation*, 454 F.2d 1226 (2d Cir. 1972).

"[A] limited publication [is one] which communicates the contents of a manuscript to a definitely selected group and for a limited purpose, and without the right of diffusion, reproduction, distribution or sale, . . ." *White, supra*, quoted in *Data Cash*, 628 F.2d at 1042.

The certified question in this case does not specify which type of publication is in issue and therefore we must address both situations.[5]

Under the 1909 Act, a limited publication is, for legal purposes, no publication at all, and therefore does not result in the divestiture of common law copyright protection or the investiture of statutory copyright protection, see *White, supra, Data Cash, supra, William A. Meier Glass Co. v. Anchor Hocking Glass Corp.*, 95 F.Supp. 264 (W.D.Pa.1951); *Schellberg v. Empringham*, 36 F.2d 991 (S.D.N.Y.1929). However, a limited publication with a notice stating the year of the limited publication would affect the potential duration of the statutory copyright protection. This is based on the rule that an antedated notice, i.e., one which states a date prior to the actual investiture of statutory copyright protection, will cause the copyright term to be computed from the date stated therein,[6] *National Comics Publications, Inc. v. Fawcett Publi-*

---

**5.** In its memorandum opinion on defendants' Motion for Summary Judgment, the District Court did not resolve the factual issue of whether the publication in the instant case was limited or general.

**6.** This rule also applies to postdated notices if the margin of error is one year or less; if the margin of error is greater than one year, the work is considered to have been published without notice, see 2 *Nimmer on* Copyright § 7.08[c][7] (1981) (and cases cited therein).

*cations, Inc.*, 191 F.2d 594 (2d Cir. 1951); *Shapiro, Bernstein & Co. v. Jerry Vogel Music Co.*, 161 F.2d 406 (2d Cir.), *cert. den.*, 331 U.S. 820, 67 S.Ct. 1310, 91 L.Ed. 1837 (1947); *Southern Music Pub. Co., Inc. v. Bibo-Lang, Inc.*, 10 F.Supp. 972 (S.D.N.Y. 1935). Despite the fact that the copyright term would be running, no statutory rights would be enforceable until a general publication actually occurred, *Basevi v. Edward O'Toole Co.*, 26 F.Supp. 41 (S.D.N.Y.1939), see also 2 *Nimmer* on Copyright § 7.08[c][2] (1981). For this reason, no benefit inures to the owner of a work which is the subject of a limited publication with notice. In fact, due to the shortening of the duration of the enforceable copyright period, the result would be an abridgement of the owner's rights and would be "a mistake in favor of the public," *Southern Music*, 10 F.Supp. at 974.

■ Similarly, we do not believe that the act of generally publishing a work with notice results in a sufficient benefit to the owner to warrant the application of statutory estoppel. While that act is necessary to qualify the work for protection under the 1909 Act, no actual benefit would be conferred on the copyright owner until an enforcement action was successfully maintained. Only after such a proceeding would there be a final determination that the owner was entitled to the protection of the Act and some type of relief awarded. While the facts which might support a finding of a general publication would be antithetical to a claim of trade secret protection, inconsistent claims may be properly asserted in the same action, see, Fed.Rule of Civ.Proc. 8(e)(2). Only where a party ob-

tains judicial enforcement of a statutory copyright and subsequently asserts trade secret protection as to the same material would the second element of statutory estoppel be present.[7]

■ Appellants contend, however, that one who publishes a work with a copyright notice obtains a benefit because the notice will serve to deter potential copiers. However, a limited publication is, by definition, "limited to a definitely selected group for a limited purpose ... *without the right of diffusion, reproduction, distribution, or sale* ..." [emphasis supplied] *White*, quoted *supra*, p. 1035. Those who are privy to a limited publication must be informed of and subject to those restrictions or the distribution will be considered a general publication, see *Data Cash, supra*. Thus, the notice could not be a significant deterrent in that situation.

In the context of a general publication, the copyright notice's deterrent effect is speculative. The notice is merely an assertion of entitlement to statutory copyright protection and is not, of course, conclusive, see *Goodis*, 425 F.2d at 403; *National Comics*, 191 F.2d 594, 602; *Shapiro, Bernstein*, 161 F.2d 406, 408–410; *Cynthia Designs Inc. v. Robert Zentall, Inc.*, 416 F.Supp. 510, 513 (S.D.N.Y.1976). Furthermore, a proper analysis of a work's status under the 1909 Copyright Act must involve more than a reading of the notice on the work, see United States Copyright Office, Library of Congress, Circular No. 22 (1973).[8] Thus, any deterrent effect of a copyright notice would be speculative and unwarranted, and would not qualify as an "actual benefit" for purposes of a statutory estoppel analysis.

---

**7.** We note, however, that the complaint in the instant case did not claim a violation of statutory copyright, although it did include a claim for a violation of common law copyright, see fn. 3 *supra*.

**8.** Circular No. 22, entitled "How to Investigate the Copyright Status of a Work," states:

"There are three ways to go about finding out whether a work is copyrighted and, if so, the facts of the copyright:

Examine a copy of the work;

Make a search of the Copyright Office catalogs and other records yourself;

Have the Copyright Office make a search for you.

None of these methods is completely conclusive. This circular is intended to offer some practical guidance on what to look for in making a copyright investigation, but there are a number of exceptions to the general principles outlined here. In many cases it is important to consult a copyright attorney before reaching any conclusions as to the copyright status of a work."

We conclude that the second element of the statutory estoppel analysis is not present in the facts stated in the certified question. The act of publishing a work with a copyright notice affixed does not, in itself, confer an actual benefit on the copyright owner. Therefore, statutory estoppel is not applicable to the facts stated in the certified question [9].

Appellants also suggest a different form of estoppel based on the argument that by placing a copyright notice on a work, the owner represents to the public that the work has been generally published and is, therefore, not secret. Thus, appellants argue, if the work has not been generally published the copyright notice is misleading and those who detrimentally rely on it should be entitled to the equitable remedy of estoppel. This argument is without merit. The copyright notice is intended to inform the public that copyright is claimed and to indicate the owner and the duration of the copyright term, see *Goodis; Shapiro, Bernstein; Cynthia Designs, supra.* As discussed *supra*, an antedated notice will cause the copyright term to be computed from the date stated therein. Thus, for the purposes intended, an antedated notice is entirely accurate. Reliance on the notice for a collateral determination, i.e. whether the information contained therein can qualify for trade secret protection, is not explicitly authorized by the 1909 Copyright Act and should not be judicially authorized by the application of an estoppel in this situation.

Finally, appellants rely on *Larrowe-Loisette v. O'Loughlin*, 88 F. 896 (S.D.N.Y.1898) for the proposition that an estoppel should be applied in this case. In *Larrowe* an author's widow sought to enjoin the defendants from selling a set of books they had allegedly copied in violation of the author's United States copyright. The case was submitted to the court on stipulated facts. In 1883, the author had registered the work, a set of books on memory and attention, for copyright in England and printed and distributed three editions of it. He sold the books to anyone willing to take his course of instruction and he required the students to sign a contract which stated, in part: "I do hereby promise that I will not communicate to any person whatsoever any idea or part of [Loisette's] system of memory, without his previous consent therefor in writing . . ." In 1886, Loisette printed a fourth edition and attempted to obtain a United States copyright for it. However, Loisette's agent (apparently no pupil of his principal) neglected to transmit copies of the work to the Library of Congress as required by the Copyright Act then in force. Loisette learned of the omission but continued to disseminate the books, some editions with both English and American copyright notices, some with only one, and some without any notice. Eventually, an edition was issued that was copyrighted in accordance with the statutory formalities. The issue before the court was the validity of the United States copyright. Analyzing the dissemination of the work by the author prior to the first attempt to obtain a United States copyright, the court stated:

> "The books were sold absolutely: no restriction being placed upon the title or upon their use other than the contract not to communicate to any person any idea or part of Loisette's system of memory. I think this distribution amounted to publication . . . In most, if not quite, all cases in which a distribution has been held not to be a publication, the author did not part with the title to the books distributed . . . This book was exposed for sale so that the public without discrimination as to persons, might have an opportunity to enjoy it . . ." 88 F. at 898.

The court noted that to permit the author to obtain a copyright after years of such distribution would be, in essence, to enlarge the period of copyright protection beyond that permitted by the Act then in force. The court then concluded that "there was a

---

**9.** Since we determine that the second element is not present in the instant case and further, that it is not imminent, see fn. 7, *supra*, we do not address the third element of statutory estoppel in the context of this case.

publication in the instant case, and the copyright is void," [10] 88 F. at 899.

After reaching the above conclusion, the court stated the language on which the appellants in the instant case rely:

> "Furthermore, the notice in the edition of 1886, that it was copyrighted in England, was equivalent to a notice that it had been published therein, and I think that the notice of a United States copyright, known by Loisette to be untrue, estops his representatives from denying that it was published here." 88 F. at 899

It is apparent from the context of the case and the structure of the opinion that this language was merely dictum. The court had already analyzed the factual issue of publication, determined that it had occurred, and concluded that the copyright was void. Therefore, even if the court believed that estoppel was appropriate, it did not, in fact, apply it. Furthermore, there is no discussion of the rationale underlying the estoppel, and it is clear that the facts of the case do not satisfy the elements of the statutory estoppel doctrine discussed *supra.*

The equitable considerations of the instant case are also quite different from *Larrowe.* In *Larrowe,* the author had utilized the copyright notice even when he knew the work did not qualify for protection (due to lack of compliance with statutory formalities) and, additionally, had sought to extend the copyright term by a belated application for copyright. In the instant case there is no showing of wrongful conduct or motive on the part of the plaintiff. It distributed the System Reference Manual to its customers and, although

it intended only a limited publication, under the 1909 Act intent is not a controlling factor in determining the nature of a publication, see *Data Cash,* 628 F.2d at 1043. The distinction between a limited publication and a general publication is a difficult line to draw [11] and the consequences of a misapprehension can be devastating, as exemplified by the result in the *Data Cash* case, *supra.* As discussed previously, the copyright notice was entirely accurate for the purpose it was intended to serve and the only harm alleged from its use was the result of appellants' unauthorized reliance upon it for a collateral determination. We therefore do not find any equitable basis for applying the extreme sanction of estoppel to prevent the plaintiff from seeking to protect certain contents of the manual as trade secrets.

We also note the argument of the *amicus curiae,* Arthur Young & Company, that the Supremacy Clause of the Constitution operates to accord exclusivity to an author's invocation of a Federal mechanism of intellectual property protection, i.e. statutory copyright, when such an election conflicts with a state scheme of intellectual property protection, i.e. trade secret law. However, we do not perceive an inherent conflict between the Federal Copyright Act and state trade secret law. The Copyright Act is designed to protect the form of a work while trade secret law applies to the contents or ideas in a work. While judicial enforcement of both forms of legal protection could present a conflict, the certified question before us deals only with the assertion of rights under both schemes, see

---

10. At the time of this opinion, the nomenclature of "limited publication" and "general publication" had not been developed. The term "publication" was used to designate acts which divested common law copyright protection (and, assuming compliance with statutory formalities, invested statutory copyright protection) and thus was the equivalent of a general publication.

11. The limited/general publication dichotomy is a judicial creation requiring an analysis of many factual elements, see 1 *Nimmer on Copyright* § 4.13 (1981). Additionally, there is a lack of unanimity among the courts as to the

proper standard, Compare *White supra,* with *Zachary v. Western Publishing Co.,* 75 Cal. App.3d 911, 143 Cal.Rptr. 34 (1977). The most authoritative treatise on copyright provides the following guidance:

> "Apart from possible conflicts, the pre-1978 case law definition of publication contains some explicit nuances which although not expressly mentioned in the statutory definition, are probably implied, 1 *Nimmer on Copyright* § 4.04 (1981)."

While we offer no elucidation of this statement, we *do not* encourage court or counsel to labor over it.

*Management Science* 6 CLSR 921 at 926. There is nothing improper in the assertion of alternative theories of legal rights, e.g. Fed.Rule of Civil Proc. 8(e)(2), and, therefore, we find no conflict at this time which would warrant invocation of the Supremacy Clause.

Accordingly, we conclude that acts of (1) affixing to certain documents a statutory notice of copyright including the prescribed year date of first publication, pursuant to the 1909 Copyright Act and the Universal Copyright Convention, and (2) publishing the documents, do not estop the party who affixed the notice and published the documents from subsequently asserting that such documents have not been generally published, but instead contain subject matter which is "trade secret."